S. WHITE ALLIS, Appellant *v.* JAMES READ, HENRY J. GARD-NER and S. PARKMAN DEXTER, Respondents.

Money paid upon a contract for the sale of goods, invalid under the statute of frauds, cannot be recovered back from a vendor who is ready to perform on his part.

And where the vendor has subsequently sold and delivered the goods to a third person, at the request of the purchaser, this, if not sufficient to constitute an acceptance and receipt of the property by such purchaser, will certainly preclude him from using the act of sale and delivery as a rescission by the vendor and the foundation of an action to recover back money paid by him to the vendor, on the original void purchase.

Where the plaintiff agreed verbally with the defendants, for the purchase of a quantity of cloths, no portion of the purchase money being then paid, or goods delivered; but, subsequently, when by the first arrangement a payment became due, the parties again met, and upon further negotiations and agreements, varying somewhat the original void contract, the plaintiff delivered to the defendants, one F.'s promissory note, which was to be collected and applied by them on the purchase price of the cloths, and he also consigned to them certain other merchandise, which they were to sell, and also apply the avails, after deducting their commissions, to the purchase price of the cloths,—*Held*, that the minds of the parties must be deemed to have then met upon all the terms and conditions of the agreement, for the sale of the cloths, and that it then became by the plaintiff's transfer of the note and consignments of merchandise, a valid and binding contract, under the statute.

*Bissell* v. *Balcom* (39 N. Y., 284) commented upon.

(Argued February 24, and decided March 21, 1871.)

APPEAL from the judgment of the General Term of the New York Common Pleas, affirming a judgment for the defendants upon the report of the referee, for $3,260.05.

The action was brought to recover back moneys and the avails of goods and merchandise, paid by the plaintiff to the defendants, upon a certain contract for the sale of "kerseys," alleged to be void under the statute of frauds. The answer, among other things, sets up a counter claim for the balance of the purchase price of the "kerseys" unpaid.

It appeared that on the 25th February, 1863, and on the 2d and 14th of March following, the plaintiff bought of the defendants, three bills of "sky blue kerseys," for the following

sums, $9,554.69, $32,867.19 and $893.75. These purchases were by parol, the bills were not signed and no money was then paid or goods delivered. On March 13th and 14th, the plaintiff paid to the defendants on account of the second bill of kerseys, $1,300, $1,200 and $1,000.

On the 2d of April, 1863, the plaintiff delivered to the defendants to be collected and applied in part payment of the second bill of kerseys a note made by one Frisbie, for $2,000, which note the defendants collected on the 24th of April, 1863, and realized therefrom $1,995. On the same 2d of April the plaintiff consigned to the defendants for sale, nine cases of cassimeres, upon the agreement that the proceeds of their sale should be received by the defendants in lieu of cash due that day on account of the said second bill of kerseys, and that the defendants should be allowed the usual commission for selling and guarantying payment of the cassimeres, The defendants in June, 1863, sold the cassimeres, and realized over and above commissions, the sum of $3,565.78. On the same 2d of April the plaintiff consigned to the defendants certain sheetings for sale to apply the net proceeds to payment of the first and second bill of kerseys, which net proceeds were $303.72.

The referee finds in addition to the above facts that: " On or about the 2d of April, 1863, the defendants at the request of the said plaintiff accepted his draft on them for the sum. of $9,200, dated April 2d, 1863, and payable six months after the date thereof, and at the maturity of said draft the defendants paid the same and the full amount thereof, and in consideration of said acceptance, the said plaintiff, among other things, promised to consign to the defendants for sale, a bill of goods bought by the plaintiff of W. C. Langley on the 27th of January, 1863. It was further then and there agreed between the plaintiff and the defendants, among other things, that the proceeds of said goods when sold by the defendants, after deducting the usual commission and guaranty, should be applied to reimburse the defendants the amount of said draft so as aforesaid accepted by them, and that the surplus, if any,

should be applied in further payment of the moneys due to the defendants from the plaintiff for the kerseys bought by the plaintiff from them and hereinbefore mentioned. The agreements before mentioned, on the said 2d day of April, (as to the Frisbie note and consignments), were made at the same time, and were part and parcel of the arrangement and agreement, in this finding of fact, first described and set forth."

" It was further then and there agreed between the plaintiff and the defendants that they should sell for and on account of the plaintiff, all the goods then in the hands of the defendants which the plaintiff had bought of them, and had consigned to them, including three cases of satinets, which the plaintiff had bought of the defendants on the 28th of January, 1863, and that the defendants should be allowed a commission of six per cent for making said sales and for guarantying the sales, and a further commission of one per cent for charges; but it was not then agreed at what time, or in what contingency the defendants should make said sales. The plaintiff thereupon, under the aforesaid arrangement, consigned to the defendants for sale, the said goods which the plaintiff had, as aforesaid, bought of W. C. Langley."

"Afterwards, and in October, 1863, the defendants were authorized and employed by the plaintiff, to sell for and on account of the latter, all the kerseys mentioned in these bills upon commission and guarantee, at not less than one dollar per yard, and the defendants accordingly, sold the same, a small part thereof at one dollar per yard, and the residue thereof, on or about the 14th of December, 1863, at one dollar and five cents per yard, and delivered the said kerseys to the said purchasers thereof. On or about the 11th and 30th days of December, 1863, the defendants sold the said three cases of satinets for the best price they could obtain therefor, and delivered the same to the purchasers thereof, and were authorized by the plaintiff so to do."

" On or about the 28th of January, A.D. 1863, the plaintiff made, indorsed and delivered to these defendants his cer-

tain promissory note, in writing, dated New York, January 28th, 1863, whereby the plaintiff promised to pay, six months after the date thereof, to the order of himself, $1,756.57, for value received. That said note was past due and payable when this suit was commenced; and the plaintiff has not paid the same or any part thereof, and the defendants are the lawful owners and holders of said note."

"After allowing to the plaintiff all the credits to which he is entitled on the several transactions hereinbefore set forth, and after charging him with interest on the debits, and allowing interest on the credits; the plaintiff on the 31st of December, 1863, was justly indebted to the defendants by reason of the premises hereinbefore stated, in the sum of $2,840.32, and the plaintiff since then has been and still is indebted to the defendants in said last sum, with interest thereon from last said date to the present time, and which said principal, sum and interest amount together, at the date of this report, to the sum of $3,260.05."

" The plaintiff before this suit was commenced, and after the defendants had sold and delivered all the goods, as is in the several findings of fact stated and set forth, demanded of the defendants payment of the said sums and items in plaintiff's complaint mentioned and described, and the defendants refused to pay the same, or either of them, or any thereof."

The plaintiff's claim was for the said moneys paid by him, and the net avails of his consignments to the defendants, as follows: $1,300 and interest, from March 13th, 1863; $1,200 and interest, from March 15th, 1863; $1,000 and interest, from April 7th, 1863; $1,995 and interest, from April 24th, 1863; $3,565.78 and interest, from June 30th, 1863; $303.72 and interest, from August 18th, 1863.

*John H. Reynolds*, for the appellant, that payment made on a contract, void by the statute of frauds, where the vendor rescinds or refuses to perform, can be recovered back, cited *Gillet* v. *Maynard* (5 Johns. R., 85); *Fancher* v. *Goodman* (29 Barb., 315); *Main* v. *King* (8 Barb., 535); *Utter* v. *Stuart*

(30 Barb., 20). That a subsequent payment on account of a contract, void by the statute, cannot render such contract valid, he cited *Allen* v. *Aguire* (5 L. O., 380); *Bissell* v. *Balcom* (40 Barb., 98). That subsequent sale and delivery of the kerseys, by the defendants, with the consent of the plaintiff, could not operate as an acceptance and receipt of the goods, by the latter, he cited *Brabin* v. *Hyde* (32 N. Y., 519); *Shindler* v. *Houston* (1 Comst., 261); *Ely* v. *Ormsby* (12 Barb., 570).

*Samuel Hand*, for the respondent, cited as to the recovery back of voluntary payments, *Collier* v. *Coates* (17 Barb., 471); *Abbott* v. *Draper* (4 Den., 51); *Dowdle* v. *Camp* (12 Johns., 451); *Clark* v. *Dutcher* (9 Cow., 674); *Wyman* v. *Farnsworth* (3 Barb., 369). That the delivery by the defendants to third persons, at the request of the plaintiff, was a valid subsequent acceptance by the latter, which was sufficient to take the case out of the statute, he cited *McKnight* v. *Dunlop* (1 Seld., 537); *Rodgers* v. *Phillips* (1 Hand, 40 N. Y., 519, 525); *Waldron* v. *Romaine* (22 N. Y., 368); *Bushell* v. *Wheeler* (15 Ad. and Ell. N. S., 442). That a subsequent payment renders the contract valid from the time of payment, he cited *Bissell* v. *Balcom* (39 N. Y., 275, 283–4); *Thompson* v. *Alger* (12 Metc., 428); *Sanderson* v. *Jackson* (2 Bos. and Pul., 238); *Brabin* v. *Hyde* and *McKnight* v. *Dunlop, supra.*

CHURCH, Ch. J. In any view which may be taken of the validity of the contract for the sale and purchase of the kerseys, the plaintiff is not entitled to recover for moneys paid upon them.

Moneys paid upon a contract invalid by the statute of frauds cannot be recovered back, provided the other party is ready and willing to perform the contract on his part. Such payments are voluntary, when made with a full knowledge of all the facts.

The law will not imply a promise to refund the money, so long as the vendor is not in default. (*Abbott* v. *Draper*, 4 Denio, 51; 12 Johns., 451.) It is claimed, however, by the plaintiff, that he is entitled to recover back the payments, on the ground that the vendor sold the property, and thus placed himself in a position where he could not perform the contract on his part. This position cannot be maintained, for the reason that the sale of the property by the defendant, as found by the referee, was made at the request and by the authority of the plaintiff himself. Assuming that such request and authority would not be sufficient to constitute an acceptance and receipt of the property by the plaintiff, so as to take the case out of the statute of frauds, yet it would preclude him from using that act as the foundation of an affirmative action in his own behalf. The sale of the property having been caused by himself, the plaintiff cannot, as between him and the defendant, recover any benefit from it. This would be to make his own act the foundation of a valid claim against the defendant. A party cannot take advantage of his own wrong, nor hold another responsible for an act which he committed himself. It would be contrary to the plainest principles of reason and justice. It is clear, therefore, that the affirmative claim of the plaintiff, to recover back the money paid, cannot be sustained.

The important question is, whether the contract was valid within the statute of frauds, so as to enable the defendants to maintain that part of the judgment in their favor against the plaintiff which was for the balance of the purchase-money.

The object of the statute of frauds, when there is no memorandum in writing, was, to have some act done by the parties independent of mere words. Hence, it provides that a part of the purchase-money must be paid at the time, or a portion of the property accepted and received. It is manifest that these requirements are not a perfect protection against fraud and perjury, or against any of the evils of mere verbal evidence, because, whether a payment is made or not, or whether any part of the property is accepted and received upon the

contract, often rests in parol, and is liable to many of the abuses which prompted the passage of the act. The terms of the contract are always open to dispute, and often induce conflict of evidence. Yet the statute affords some protection. It requires an act in which both parties must participate. There can be no payment by the buyer without the knowledge and consent of the seller. Nor can there be any delivery without the knowledge and consent of the buyer. The words accept and receive import that the buyer must actually receive, and consent to receive, the property, or a portion of it, under the contract. It is claimed by the defendants that this contract is valid under both branches of the statute, and, by the plaintiff, that it is not valid under either; and neither question is free from difficulty. The court below placed their decision in favor of the validity of the contract upon the sale and delivery of the same by the defendants, at the request and by the authority of the plaintiff, and held that such sale, upon request, constituted an acceptance and receipt of the property by the plaintiff.

But the view I take of this case, under the third exception in the statute, renders it unnecessary to pass upon the question of the sufficiency of the acceptance and receipt.

The statute declares such contracts void if there is no memorandum in writing and no delivery, "unless the buyer shall, *at the time*, pay some part of the purchase-money."

At the time of making the contract for the purchase of the "*kerseys*," the defendants gave to the plaintiff bills of sale, not signed so as to make them written memorandums, within the meaning of the statute, but containing the terms of sale, including the price and time of payment; but nothing was paid at that time. Passing over the payments made during the month of March as of no legal significance, and regarding the contract void by the statute of frauds, it seems that on the 2d day of April, when a payment became due, the parties met and entered into further negotiations and agreements in respect to the sale and disposition of the property. The plaintiff delivered at that time a note to the defendants of

$2,000, which was to be collected and applied upon the purchase-price, and consigned other merchandise to them to be sold, and the net avails applied, and agreed that the defendants should sell all the property in their hands for the plaintiff, and have a commission of six per cent for selling and guarantying the sales, and one per cent for charges.

It cannot be doubted that at this time the minds of the parties met upon all the terms and conditions of the agreement for the sale and purchase of the goods, and made definite arrangements for such purchase, varying somewhat the original void contract, especially as to the times of payment, and added to the contract the agreement for the sale of the property by the defendants, and the compensation to be allowed for their services, but adopting the price as before fixed and stipulated as contained in the bills of sale to which the parties assented. The statute must have a reasonable construction and its requirements should not be frittered away, neither should it be made an instrument of fraud, by an arbitrary and technical construction. When this contract was originally made, it was void, but there is nothing in the statute to prevent the parties from making a valid contract afterwards, and adopting a part or the whole of the terms of the void contract. The statute calls for acts, not mere words, and nothing could be more formal or decisive than the acts and negotiations of the parties on the occasion alluded to. There were four independent transactions entered into for the purpose of definitely consummating the sale and purchase of this property. A note of $2,000 was delivered. Nine cases of cassimeres were consigned by the plaintiff to the defendants, thirteen bales of sheetings were also consigned; a draft drawn by the plaintiff upon and accepted by the defendants, upon a promise to consign other goods which had been purchased of one Langley, and which were afterwards consigned, the net avails of all which were to be applied in payment, upon the purchase price of the property in question. If there was no valid contract before, there was every element of such a contract at that time.

The terms and conditions were fully understood and agreed upon. All the evils which the statute intended to prevent were guarded against. The acts of the parties were numerous, open and unmistakable. It is unnecessary to determine that every void contract may be made valid by a payment subsequent to the time of making it, but I do not hesitate to say, that after a void contract has been made, the parties may make a valid contract, by adopting the terms of the void contract, provided it appears that such terms are understood and assented to, and a payment is made and received upon the contract. It is a valid contract from that time, and the statute is as fully satisfied, as if the contract had been made valid originally by a payment at that time.

In *Thompson* v. *Alger* (12 Met., 428), the Supreme Court of Massachusetts, held in a case, involving our statute of frauds, that "when the payment was actually made and accepted with the full concurrence of both parties, then the contract takes effect, then a part payment of the purchase money has been made, and then the parties have made a valid contract." With the qualification that it should appear that the parties understood and assented to the terms of the contract at the time of the payment, I see no objection to the adoption of these views.

In *McKnight* v. *Dunlop* (1 Seld., 537), PAIGE J., said, "If the contract is not in law deemed to be made until the part payment of the purchase money, and the previous invalid oral agreement is merely referred to, to ascertain the terms of subsequent valid contract, the decision * * * may be regarded as sound."

In *Bissell* v. *Balcom* (39 N. Y., 284), WOODRUFF, J., said with reference to making a valid contract after a void contract had been made: "This may be done by reference thereto, and payment accepted on account thereof may be deemed a reproduction of all those terms and conditions in the minds of the parties, a meeting of those minds in their present mutual assent thereto, and a compliance with the statute by payment and acceptance of part of the price." And

while it does not appear that the court placed their decision upon this precise proposition, yet it is entitled to some weight in showing the tendency of judicial sentiment. In the case before us, it is sufficient to say that the acts and declarations of the parties on the 2d day of April were ample to constitute a valid contract for the purchase and sale of the property, and that the referee was fully justified in his legal conclusion. The employment of the defendants by the plaintiff afterward to sell the property for him, and the sale in pursuance thereof, completed the execution of the contract by both parties, except as to the unpaid balance of the purchase-money for which in part this judgment was recovered. The judgment must be affirmed with costs.

All the judges concurring except ANDREWS, J., absent.
Judgment affirmed.