THOMAS R. HAWLEY et al., Respondents, *v.* NELSON KEELER et al., Appellants.

Part performance, to take a parol contract for the sale of goods out of the operation of the statute of frauds, must be with the assent of both parties. Payment to an agent of the vendor of a portion of the purchase-money is as effectual for that purpose as payment to the principal. Resort cannot be had to the verbal agreement, however, to establish the agency. The authority to receive the payment may be shown by any act, on the part of the vendor, recognizing the agency; and a subsequent ratification

Statement of case.

of the act of an assumed agent in receiving the payment is equivalent to an original authority to receive it.

While it is a general rule in the law of agency, that where an authority to act in a matter of a private nature is conferred by the principal upon several, all must act in the execution of the power, the authority may be given in such terms as to authorize a several execution or an execution by a majority or other number; and in the absence of express words, if the power is so exercised under circumstances justifying the inference that the principal intended that less than the whole number might act, the principal is bound to those who have dealt with the agents acting upon such inference.

A party who disables himself from performing his contract before default by the other party waives the performance of acts by the latter, which otherwise he would be bound to perform as conditions precedent to a recovery on the contract.

Defendants, the patrons of a cheese factory, appointed a committee of three, B., M. and K., to sell their cheese for a year. B. did not act to any extent with the committee. Frequent sales were made by the other two without his concurrence, and the money arising therefrom was distributed among and received by defendants; and plaintiffs had so purchased prior to the transaction in question. On the second November, 1868, M. and K. offered, by parol, to sell plaintiffs 80,000 pounds of cheese at a given price, plaintiffs to decide on or before the fourth whether they would purchase. If they so elected they were to deposit $1,000 in a designated bank to the credit of K., and the balance of the purchase-money to be paid, $5,000 in twenty, and the residue in thirty days, the bank to be security. On the third November plaintiffs deposited the $1,000 and notified K., by letter, that they would accept the proposition and had made the required deposit. K. received the notice, called at the bank and verified the deposit, and expressed himself satisfied. Before the first payment became due M. and K. sold the cheese to other parties. In an action for damages, *held*, that the contract was not within the statute of frauds, as there was a payment of part of the purchase money made at the time when, by the agreement of the parties, the contract of sale was to arise; that the evidence authorized a finding by the jury that the agreement to give the bank as security was to be performed upon the delivery of the cheese, and defendants having put it out of their power to perform before default on the part of plaintiffs, a tender of security, before suit was unnecessary; that the circumstances justified a finding that defendants had knowledge and assented to an exercise of the power of sale by M. and K.; that their concurrence in making the contract in question was sufficiently shown; and that the jury having found these facts in favor of the defendants, a valid contract was established and defendants were bound by it.

(Argued May 14, 1873; decided June 3, 1873.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial department, affirming a judgment in favor of plaintiffs entered upon a verdict. (Reported below, 62 Barb., 231.)

This action was brought to recover damages for an alleged breach of contract for the sale of a quantity of cheese. Defendants resided in Cortland county and were patrons of a cheese factory at Cuyler, in said county They appointed a committee of three, viz., William Bogardus, Addison Morse and Nelson Keeler, whom they authorized to contract for the sale of their cheese for the year 1868. Bogardus was not a patron and was not interested in the manufacture; he took little if any part in making contracts, and the other two members of the committee acted without consulting with him. They had thus made a large number of sales, and the proceeds had been distributed among the defendants. Plaintiffs purchased in July of Morse and Keeler, without the concurrence or participation of Bogardus. On the 2d November, 1868, plaintiffs negotiated with Morse and Keeler for the purchase of about 80,000 pounds. They offered the cheese for sixteen and three-eighth cents per pound, and gave plaintiffs the refusal of it until November fourth, at noon. If plaintiffs concluded to purchase, the conditions of the sale were that they were to deposit $1,000 at Barber's Bank, of Homer, to pay $5,000 in twenty days and the balance in thirty days, plaintiffs to give the said bank as security. On the third November plaintiffs concluded to accept the offer. They deposited the $1,000 as stipulated and sent a letter to Keeler notifying him of the acceptance and of the deposit, inclosing a certificate of the cashier. This letter was received. Keeler called at the bank on the fourth and verified the deposit, expressing himself satisfied, and the same day recognized the sale in conversation with one of the plaintiffs. There was evidence also that Morse recognized the sale. On the fifteenth November Morse and Keeler sold the cheese to other parties for sixteen and a half cents per pound. Bogardus was not consulted in regard to the sale. Plaintiffs

did not tender or offer to pay the balance, nor did they offer security.

Defendants moved for a nonsuit, upon the grounds in substance that the evidence did not show an agreement, as the alleged contract was not made by all of the committee; that the alleged contract was void, by the statute of frauds, and that plaintiffs had shown no performance or tender of performance on their part. The motion was denied and defendants excepted. Substantially the same requests to charge were made and declined.

*Francis Kernan* for the appellants. Plaintiffs could not maintain an action for a breach of the contract, without a tender of performance by them. (*Dunham* v. *Mann*, 4 Seld., 508; *Williams* v. *Healey*, 3 Denio, 363; *Parker* v. *Parmele*, 20 John., 130; *Clute* v. *Robison*, 2 Johns., 295; *Green* v. *Reynolds*, 2 Johns., 207; *Johnson* v. *Wygant*, 11 Wend., 48; *Jones* v. *Gardner*, 10 Johns., 266; *Gazley v. Price*, 16 Johns., 267.) The contract was void by the statute of frauds. (3 R. S., 222, § 4 (5th ed.); *Artcher* v. *Zeh*, 5 Hill, 200; *Shindler* v. *Houston*, 1 Comst., 261; *Ely* v. *Ormsby*, 12 Barb., 570; *Downs* v. *Ross*, 23 Wend., 270; *Bailey* v. *Ogden*, 3 Johns., 399; *Allen* v. *Aquira*, 5 L. O., 380; *Brabin* v. *Hyde*, 32 N. Y., 519; *Brand* v. *Brand*, 33 How., 167; *McKnight* v. *Dunlop*, 1 Seld., 542.) The giving of the check was not a payment. (*Turner* v. *Bk. of Fox Lake*, 3 Keyes, 425; *Bradford* v. *Fox*, 11 Tiff., 289; *I. B. & N. Y. R. R. Co.* v. *Collins*, 3 Lans., 29.) The agency being for private purposes, no contract was valid unless all the committee concurred. (*People ex rel. Washington* v. *Nichols, Comptroller*, decided 3d depart., Gen. Term, 1872; Dunlap's Paley on Agency, p. 177 and notes; *The People ex rel. Hawes* v. *Walker*, 23 Barb., 304; *Gildersleeve* v. *Board of Education*, 17 Abb. 201; *Green* v. *Miller*, 6 Johns. 39; Chitty on Contracts, p. 215, n. d; 2 Kent's Comm., pp. 843, 844, 11th ed. and notes; *Sinclair* v. *Jackson*, 8 Cow. R., 583 of opinion; *Perry* v. *Tynen*, 22 Barb., 137; *Powell* v. *Tuttle*, 3 Comst., 396; 3 R. S., 869, § 29, 5th ed.; *Downing* v. *Rugar*, 21 Wend., 178; *Keeler v. Frost & Worden,*

22 Barb., 400; *Gardner* v. *Clark*, 21 N. Y., 399.) An agent in a business requiring the exercise of judgment and discretion cannot delegate the authority to another. (Dunlap's Paley on Agency, 175 and notes; 2 Kent's Com., 495, § 41.) Defendants were not partners. (*Porter* v. *McClure et al.*, 15 Wend., 187; *Post* v. *Kimberly*, 9 Johns., 470; 503, 504 opinion; *Irvine* v. *Forbes*, 11 Barb., 587; *Hoare* v. *Dawes*, 1 Doug., 373; *Coope* v. *Eyre*, 1 H. Bla., 37; *Gibson* v. *Lupton*, 9 Bing., 297; *Merrick* v. *Gordon*, 20 N. Y., 93.)

*M. Goodrich* for the respondents. The contract was valid and is not affected by the statute of frauds. (*Bissell* v. *Balcom*, 39 N. Y., 275; *Webster* v. *Zeilly*, 52 Barb., 483.) Plaintiffs were not obliged to tender performance before bringing this action. (*Bunge* v. *Koope*, 48 N. Y., 228; *Anderson* v. *Sherwood*, 56 Barb., 66, 69; *Crist* v. *Armour*, 34 id., 378; *Skinner* v. *Tinker*, 33 id., 333; *Frost* v. *Clarkson*, 7 Cow., 24; *Moses* v. *Bierling*, 31 N. Y., 462.) The defendants were partners, and a sale by one was binding upon the copartnership. (*Wells* v. *Gates*, 18 Barb., 517; 19 id., 517; 19 Wend., 424; 5 Hill, 478; Story on Part., 82, § 54 (ed. 1841), 83, 84, § 56; *Williams* v. *Lawrence*, 47 N. Y., 462; *Marritt* v. *Walsh*, 32 id., 685; *Post* v. *Kimberly*, 9 J. R., 490, 495, 496; 20 id., 611; *Champion* v. *Bostwick*, 18 Wend., 175; *Merrick* v. *Gordon*, 20 N. Y., 93; *Davis* v. *Grove*, 2 Robt., 134; *Ward* v. *Thompson*, 22 How. U. S., 330; *Vanderwater* v. *Mills*, 19 id., 82; 1 Wait L. & Pr., 278.) Defendants being partners as to the cheese, plaintiffs had a right to purchase it of any one of the partners. (Story on Part., 144, § 101, and cases cited in note 2; 12 N. Y., 442, 455.) The sale by Morse & Keeler was binding upon the defendants, who, it is to be presumed, acted with the consent of Bogardus. (*Wells* v. *Gates*, 18 Barb., 554; *In re Church St.*, 49 id., 455, 458; *French* v. *Price*, 24 Pick., 13; *Dickson* v. *Lodge*, Starkie, 226; *Downing* v. *Ruger*, 21 Wend., 178; *Roseboom* v. *Mosher*, 2 Den., 61; *Miller* v. *Chance*, 3 Edw., 399; *Godfrey* v. *Sanders*, 3 Wils., 73.) The public had a right to infer from the

conduct of defendants and their agents, that Keeler & Morse
were authorized to make sales. (*Perkins* v. *Ins. Co.*, 4 Cow.,
645; 4 Robt., 75, 85; 16 Barb., 72; 1 Hill, 501; 32 Barb.,
17, 18; 35 id., 467; 44 id., 469; 5 Abb. [N. S.], 345; *Mun*
v. *Commission Co.*, 15 J. R., 44; *Wood* v. *R. R. Co.*, 4 Seld.,
160; 17 Barb., 171; 14 id., 358.)

ANDREWS, J.   The first question arises upon the exception
to the refusal of the court to nonsuit, upon the objection that
the contract proved was void within the statute of frauds.
The correctness of this ruling depends upon the considera-
tions, first, was there a payment of a part of the purchase-
money; and, second, was it made at the time of the making
of the contract of sale: for, by the express terms of the
statute, both of these things must concur to make a part
payment effective to take the contract out of the statute.
The statute does not condemn verbal contracts for the sale
of goods in any case; but it requires that certain contracts,
of which the contract in this case is one, if not in writing,
shall be authenticated by some mutual act of the parties in
part performance of the verbal agreement before it shall be
obligatory; and the act of part performance may originate
with the vendor or vendee: with the vendor if a delivery
of part of the goods, and their acceptance by the vendee, is
the ground for validating the contract; with the vendee if
part payment is relied upon.   In either case the assent of
both parties to the act of part performance is necessary.
Delivery of the goods without acceptance is insufficient;
and payment implies a receipt and acceptance of the money
or consideration by the party to whom it is made.   Payment
may be made to the vendor or to an agent authorized to receive
it; and, when made to an agent, it is payment to the principal.
This rule of law applies as well to contracts within the
statute of frauds as to other contracts.   Payment to an agent
furnishes the same ground of security against false claims as
if made directly to the principal.

If the bank was the agent of the defendants to receive the

$1,000, deposited by the plaintiffs to the credit of Keeler, then such deposit was, in law, a payment of a part of the purchase-money. The plaintiffs lost their title to the money and it was vested in the defendants' agent, for whom the bank held it. The designation of the bank, by the defendants, as the depositary, was shown to have been made at the time the other terms of the proposed contract of sale were agreed upon. There was no proof of any antecedent agency by the bank for the defendants for any purpose. If the proof of the agency of the bank to receive the deposit rested alone upon the oral preliminary agreement, it would be difficult to sustain the judgment. The verbal agreement was void, and the plaintiffs could not resort to it to establish the agency, without which the deposit would have been a nullity. But the authority to receive the payment for the defendants could be shown by any act on their part, recognizing it. And if the defendants subsequently ratified the act of the assumed agent in receiving the deposit it was equivalent to an original authority to receive it. That the defendants adopted and assented to the payment to the bank after it was made, the evidence tended to show. Keeler was informed of the deposit November 3, 1868, and, the same day, went to the bank and verified the information, and expressed himself satisfied.

Was the payment made at the time of making the contract of sale? The provision as to the time of payment was introduced into the statute at the revision in 1830. The history of the legislation on this subject is given in *McKnight* v. *Dunlop* (5 N. Y., 537); and the question has arisen whether a payment made subsequent to the void verbal contract satisfies the statute. The views in favor of this proposition are expressed by WOODRUFF, J., in *Bissell* v. *Balcom* (39 N. Y., 275). But by the strictest construction of the transaction, the payment in this case was made at the time of the contract, assuming, as we are bound to, for the purposes of this question, the truth of the evidence on the part of the plaintiffs. The terms of a proposed

contract for the sale of the cheese were agreed upon November 1, 1868, but there was no present contract of sale; and whether such a contract should be made was to depend upon the election of the plaintiffs, on or before November third, to take the cheese at the price named, and their depositing $1,000 in the bank to Keeler's credit. The deposit was made at the time, when, by the agreement of the parties, the contract of sale was to arise; and it was one of the conditions upon which its existence depended.

The objection taken that the plaintiffs failed to give security for the time payments on the contract cannot be sustained. The jury were authorized to find that the agreement to give the bank, as security for the unpaid purchase-money, was to be performed on the delivery of the cheese. The time when the payments were to be made was fixed by the contract. Before the first payment became due the defendants sold the cheese to other parties, and disabled themselves from delivering it under their contract with the plaintiffs. There had been no default on the part of the plaintiffs; and a tender of security after that time on a contract which could not be performed by the defendants was unnecessary and useless. The party who disables himself from performing his contract before default by the other party waives the performance of acts by the latter, which, except for such disability, he would be bound to perform as conditions precedent to a recovery on the contract.

The remaining question relates to the validity of the contract, in view of the fact that but two of the three committeemen, appointed by the patrons to make sales, acted in making it. It is well settled, as a general doctrine in the law of agency, that when an authority to act in a matter of a private nature is conferred by the principal upon more than one person, all must act in the execution of the power. This is the construction which the law puts upon the power following the supposed intention of the parties, and there must, ordinarily, be a joint execution of the agency. The authority may be conferred in such terms as to authorize a

several execution, or an execution by a majority or other number; and in the absence of express words it may have been exercised under such circumstances as will justify the inference that the principal intended that less than the whole number might act; in which case he would be bound to those who had acted upon such inference. The general rule, that a joint execution must be had of an authority given to several, has been made to yield for the benefit of trade, and to meet supposed necessities, in contracts made by one of several joint owners of ships, and in case of sales, made by one of two factors, of goods consigned to them for sale. In this case it appeared that Bogardus had not acted, to any extent, as one of the committeemen during the year. There had been frequent sales made by Keeler and Morse before this sale without his advice or concurrence; and the money arising therefrom had, from time to time (as may be inferred from the evidence), been distributed among and received by the defendants. The plaintiffs, in July previous, made a purchase of the two acting committeemen, without any participation of Bogardus in the transaction; and the cheese embraced in the contract in this case was afterward, as the proof tends to show, sold to other parties without consultation with him. The patrons lived in the vicinity of the factory. Some of them, not on the committee, were present at times when the question of the sale of cheese was considered. The question is not without difficulty; but we are of opinion that the jury, in view of the character of the agency, the manner in which, for a long time, the authority had been exercised, the prior dealings with the plaintiffs, the receipt by the defendants from time to time of the proceeds, from sales made by Keeler and Morse alone, without dissent or objection to the contracts made, might lawfully find that the patrons had knowledge of and assented to the execution of the power of sale by a majority of the committee. It cannot be assumed, under the circumstances, that the principals were ignorant of the conduct of their agents; but the presumption is that they understood the course of the

business and dealings with the common property, especially as no evidence was given on their part that they were not informed thereof. The concurrence of Keeler and Morse, two of the committeemen, in making the contract sued upon, was sufficiently shown, and the defendants were bound by it.

These considerations lead to an affirmance of the judgment, and the following authorities bear upon the propositions stated in this opinion: *Outwater* v. *Dodge*, 6 Wend., 397; *Sprague* v. *Blake*, 20 id., 63; *Lawrence* v. *Taylor*, 5 Hill, 107; *Allis* v. *Reed*, 45 N. Y., 142; *Bunge* v. *Koop*, 48 id., 228; *Norman* v. *Phillips*, 14 M. & W., 277; *Caines* v. *Smith*, 15 id., 189; *Godfrey* v. *Saunders*, 3 Wils., 73; *French* v. *Price*, 24 Pick., 13; Broom's Legal Maxims, 216.

Judgment affirmed, with costs.

All concur.

Judgment affirmed