### DRAKE HARDWARE CO. v. DE WITT et al.

(Supreme Court, Appellate Division, Third Department. January 4, 1911.)

1. FRAUDS, STATUTE OF (§ 89*)—SALES OF GOODS—DELIVERY AND ACCEPTANCE.
   To satisfy the statute of frauds, there must not only be a delivery of the goods by the seller, but there must also be an actual acceptance by the purchaser, with an intention of taking possession as owner, and this intention must be indicated by some unequivocal act.
   [Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 165–173; Dec. Dig. § 89.*]

2. ACTION (§ 65*)—RIGHTS AND DEFENSES ARISING AFTER COMMENCEMENT OF ACTION.
   In an action to recover the price of a machine, in which the right to recover depended on acceptance of the machine, evidence as to acceptance subsequent to the commencement of the action was inadmissible, as the rights of litigants are to be determined as of the date of the beginning of the action.
   [Ed. Note.—For other cases, see Action, Cent. Dig. §§ 735, 736; Dec. Dig. § 65.*]

3. SALES (§ 182*)—ACTIONS FOR PRICE—QUESTION FOR JURY.
   Evidence in an action for the price of a machine *held* to make the question of acceptance of the machine one for the jury.
   [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 492–495; Dec. Dig. § 182.*]

Appeal from Trial Term, Schuyler County.

Action by the Drake Hardware Company against Niram F. De Witt and Charles Bower, as surviving partners. Judgment for plaintiff, and defendants appeal. Reversed.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

Swartwood & Personius (Lewis H. Watkins, of counsel), for appellants.

Joseph F. Rice, for respondent.

COCHRANE, J. This is an action to recover the purchase price of a De Laval cream separator. The defendants were engaged in a creamery business and had installed a United States separator. The contract was made by one Elston, an agent of the plaintiff. He testified that the plaintiff's machine was installed in the defendants' creamery under an agreement that it was to be tested in competition with the United States machine, and that it was not to be paid for unless it did "better all-around work" than the other machine. He further testified that the two machines were to be tested by the defendants' butter maker, Mr. Sloan, and that the defendants agreed to abide by his decision in

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

reference to the two machines. The defendants admitted that the two machines were to be tested in competition with each other, and that if the plaintiff's machine did "better all-around work" they were to accept it, but denied that they were to be bound by the judgment of Sloan.

The price of the machine was $375. The contract was oral, and no part of the purchase price has been paid. The defendants argue that there has been no acceptance of the machine sufficient to take the contract out of the statute of frauds. The machine was installed in the defendants' creamery July 3, 1906. This action was brought October 2, 1906. The serious question in the case is whether on this latter date the defendants had accepted the machine within the meaning of the statute of frauds. The learned trial justice charged the jury as follows:

"If you should find that the bargain was as stated by Mr. Elston, that Mr. Sloan was to make the test, and that whatever he said about it should be final, why then you will not have to consider this question of keeping the machine or acceptance at all, because it is undisputed that Mr. Sloan did make a test, and that he reported to the defendants that this De Laval machine was the better machine. But if you should not find in favor of the plaintiff upon that question, then you have the right to consider this other question of the use of the machine for the time which has been stated, as bearing upon the question of whether there was an acceptance of it by the defendants, and whether they ought to pay for it under these circumstances."

Under this charge, if the jury believed the testimony of Elston that the opinion of Sloan was to be conclusive, they did not need to consider the question of acceptance; and, as they may have believed Elston's testimony, it cannot be said that they have found in favor of the plaintiff on the question of acceptance. To sustain this judgment, therefore, it is necessary to hold as matter of law that there was an acceptance of this machine by the defendants sufficient to satisfy the statute of frauds, providing the defendants were to abide by the opinion of Sloan.

In Stone v. Browning, 68 N. Y. 598, goods were sold under an arrangement that they were to be examined by the defendants at their store before they should become liable for the purchase price. The court laid down the rule concerning an acceptance under the statute of frauds as follows:

"The receipt of the goods by the defendants at their store under this arrangement was clearly not an acceptance of them. They received them for the express purpose of seeing whether they would accept them or not. Some further act on their part was necessary to constitute an acceptance, which would give validity to the contract of purchase. It was requisite either that they should have made the examination and pronounced it satisfactory, or that they should have dealt with the goods, or done some unequivocal act evincing their intention to accept them unconditionally as their own property, in order to supply the place of a written contract of purchase. * * * When goods are sold subject to examination, and there is no written contract, Blackburn, in his work on Sales (pages 22, 23), lays down the rule as follows: 'So long as the buyer can, without self-contradiction, declare that the goods are not to be taken in fulfillment of the contract, he has not accepted them. And it is immaterial whether his refusal to take the goods be reasonable or not. If he refuses the goods, assigning grounds false or frivolous, or assigning no reason at all, it is still clear that he does not accept the goods, and the question is not whether he ought to accept, but whether he has accepted them.' "

It is well established that to satisfy the statute there must not only be a delivery of the goods by the vendor, but there must also be an actual acceptance by the vendee with an intention of taking possession as owner, and that this intention must be indicated by some unequivocal act. Shindler v. Houston, 1 N. Y. 261, 49 Am. Dec. 316; Pitney v. Glens Falls Insurance Company, 65 N. Y. 6, 26; Scully v. Smith, 110 App. Div. 88, 96 N. Y. Supp. 998; Follett Wool Company v. Utica Trust & Deposit Company, 84 App. Div. 151, 82 N. Y. Supp. 597. As stated in Pitney v. Glens Falls Insurance Company, supra, and many times reiterated:

"There must be some overt act done subsequent to the sale unequivocally indicating the intention of the parties."

Tested by the foregoing principles, do the facts in this case establish as matter of law that defendants had accepted the property on the 2d of October, 1906, when this action was instituted, assuming that Sloan's judgment was to be conclusive? I am of the opinion that the question must be answered in the negative. As stated, the machine was installed July 3, 1906. Sloan, as a witness for the plaintiff, testified that during the month of July he operated both separators for a few days at a time alternately, and took occasional tests while doing so; that he operated the plaintiff's machine during August; that about the last of August he received a letter from one of the defendants, notifying him not to operate it longer; and that he did not do so until after the time when this action was commenced. He further testified that thereafter he operated it until March, 1907, when he left the service of the defendants, although there is evidence that he admitted that in thus operating it he was acting contrary to the defendants' instructions. The defendants were engaged in other business, and were not at the creamery, except at rare intervals, and it does not appear that they were aware that Sloan was disobeying their instructions.

Testimony as to occurrences subsequent to the commencement of the action was clearly illegal, not only because the action must be determined with reference to the facts which existed at the time of its commencement, but also because it is very clear that, if the defendants had not then accepted the machine, they have not done so since, for the reason that by their answer interposed herein, and by their resistance of the action, they have been disclaiming liability to the extent of their power to do so. It further appears that Sloan had an interest in the sale of plaintiff's machines. Sloan testified at the trial that plaintiff's machine "did the best all-around work"; but it does not appear when he reached that conclusion. He may have reached it after the commencement of the action. Neither does it appear that he ever communicated his conclusion to the defendants. The statement of the learned trial justice, above quoted, that it is undisputed that Sloan reported to the defendants that plaintiff's machine was the better machine, is hardly supported by the facts. Sloan made to the defendants some criticism of the United States machine. Those criticisms related merely to the fact that with the boiler in use he could not get steam enough to make it do good work, and that it was a heavy machine to handle and clean. The capacity of the United States machine was greater than that of

the other, and required more steam to operate it; but the steam was generated in a boiler which had been on the premises, and had not been furnished in connection with the separators.

The evidence falls far short of showing that Sloan, before the action was commenced, had reached the conclusion that plaintiff's machine was "the best all-around" machine, or that he so informed the defendants; and if he had reached that conclusion, it was a question whether it was an honest conclusion, in view of his interest in plaintiff's business. It is true the defendants did not offer to return the machine; but they gave orders to Sloan in the latter part of August not to use it, and the mere fact that it remained in their possession until about the 1st of October, under orders by them that it should not be used, is not necessarily indicative of a purpose on their part to accept it. In any aspect of the case, the question of acceptance was an important question to be submitted to the jury; and as, under the charge of the court, they have not necessarily considered that question, it follows that the judgment must be reversed.

The judgment and order must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.