F. KIESER & SON Co., INC., Appellant, *v.* CLYDE L. HALLOCK, Respondent.

Third Department, May 3, 1922.

Sales — action to recover price of carload of meal — contract of sale oral — no part of goods accepted and no part of price paid — defendant agreed to pay freight and refused to accept because of freight overcharge — Statute of Frauds good defense — invoice differing from contract and two telegrams giving reason for non-acceptance and offering to compromise not sufficient memorandum in writing to satisfy statute — no recovery even though Statute of Frauds were not considered as plaintiff failed to sustain burden of proving no freight overcharge — refusal to accept goods on one ground waives all other objections.

The Statute of Frauds is a good defense in an action to recover the purchase price of a carload of linseed meal, shipped to the buyer's freight station, where the contract of sale was oral, no part of the meal was accepted, no part of the purchase price was paid, and the buyer refused to accept because of an overcharge of freight.

An invoice differing materially from the oral contract and two telegrams to plaintiff, one by defendant stating why he would not accept the meal and the other containing an offer to compromise on behalf of defendant, are not a sufficient memorandum in writing to satisfy the statute.

Even though the Statute of Frauds were not considered, there could be no recovery as plaintiff failed to sustain the burden which was upon it of proving that there was no freight overcharge.

*It seems,* that where a buyer refuses to accept delivery on a ground specified, he is deemed to have waived all other objections.

APPEAL by the plaintiff, F. Kieser & Son Co., Inc., from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Tioga on the 29th day of September, 1921, upon the report of a referee appointed to hear and determine the issues, dismissing the complaint.

The action is brought to recover the purchase price of a carload (thirty tons) of linseed meal, called also oil meal, to be shipped to the defendant during the latter half of September, 1920, at the agreed price of sixty-five dollars per ton; the defendant to pay the freight from Edgewater, N. J., to New Woodstock, N. Y., where the defendant conducted his business; also the war tax. On September 18, 1920, the defendant by letter asked for a cancellation of the contract, which the plaintiff refused. Plaintiff, which acts

as a jobber, did not ship the meal until October 15, 1920, and excuses its delay because the plant of its vendor burned and it procured the carload of oil meal from Toledo, O. There is no allegation or proof of the time when this fire occurred. The car reached New Woodstock, its destination, October 26, 1920. On October twenty-ninth the defendant sent this telegram to plaintiff:

"NEW WOODSTOCK, N. Y.

"Car Oil Meal here, there is an overdraft too much freight, cannot accept.          "C. L. HALLOCK."

To this no reply was received, and on October thirtieth the freight agent at New Woodstock, in behalf of the defendant, sent this telegram:          "NEW WOODSTOCK, N. Y.

"Freight and tax on car oil meal from Leesburg, Ohio, is one sixty-nine-ninety-five demurrage $4.00 and freight added to draft thirty seven eight, making total two hundred eleven, three. Have no through rate from Edgewater but from previous shipment rate should be 16-eight tenths cents. This would make difference due Hallock one hundred six, thirty. Will accept car if check is mailed at once. Answer.          "AGENT."

The freight rate charged by plaintiff was thirty-one cents per 100 pounds. Thereafter there were telephone conversations between representatives of plaintiff and the defendant; the plaintiff did not send on the check and has never paid any part of the freight. At the end of the telephone conversations the defendant refused to take the meal.

*Frederick E. Hawkes*, for the appellant.

*Lynch, Clifford & Taylor* [*Martin S. Lynch* of counsel], for the respondent.

VAN KIRK, J.:

The contract of sale was oral. The value of the meal was more than fifty dollars; no part of it was accepted and received by defendant; no part of the purchase price was paid; and no written memorandum was signed by the plaintiff. The defendant has pleaded the Statute of Frauds as a defense. About October 18, 1920, the plaintiff sent defendant a written invoice of the shipment, which contained all of the essential elements of a memorandum of the contract. This invoice was received by the defendant and the plaintiff claims that it, with the two telegrams sent to plaintiff by defendant, one October twenty-ninth and the other October thirtieth, satisfied the requirements of the statute that there should be a memorandum in writing signed by the defendant. An examination

of the invoice and telegrams makes it apparent that this claim is without foundation. The invoice varies in material respects from the terms of the oral contract. In neither telegram was there any reference to this invoice and nothing in either telegram indicates that the defendant intended to recognize or approve the invoice or accept its terms. The first telegram stated simply the reason why he could not accept the car. The second telegram, as the referee held, was simply an offer to compromise, which the plaintiff did not accept, choosing rather to rest upon whatever rights it had under the rejection. The contract of sale is, therefore, not enforcible by action. (Pers. Prop. Law, § 85, as added by Laws of 1911, chap. 571; *Drake Hardware Co.* v. *Dewitt,* 142 App. Div. 192.)

Nor could the plaintiff recover if the Statute of Frauds were not pleaded, or if, as appellant claims, the contract by the evidence were taken out of the statute. The record would still present the question whether or not there was an overcharge for freight. The appellant's position then is: The oral contract is valid, and, but for the Statute of Frauds, could be enforced. The defendant testified that he did not cancel the purchase because of the fall in the price of the meal, and that, when he sent the telegram on October thirtieth, he was willing to accept the car if they would send the check, although he thereby would have lost $300 or $400 at that time. The fair construction of the telegram of October twenty-ninth is that defendant refused to accept the meal because of the overcharge for freight. Where a purchaser of goods refuses to accept delivery on a ground specified, he is deemed to have waived all other objections. (*Pierson & Co.* v. *American Steel Export Co.,* 194 App. Div. 555; *Hess* v. *Kaufherr,* 128 id. 526; *Littlejohn* v. *Shaw,* 159 N. Y. 188.) It must be held that the telegram and the evidence of the defendant show that the defendant refused the delivery of this car of meal because of the freight overcharge. Assuming this position, the burden then rested upon the plaintiff, in order to recover the price of the meal, to show that the freight rate from Edgewater to New Woodstock was thirty-one cents per 100 or more. (*Littlejohn* v. *Shaw, supra.*) The referee did not find the correct freight rate between these points and he refused to find specific rates upon requests of both plaintiff and defendant. This was probably due to the fact that the evidence on this question is unsatisfactory. The defendant testified that the freight rate was seventeen cents. He was asked: " When did you get one at that rate? A. Day before yesterday." He testifies at another place that he had had a number of cars from Edgewater then (about the time of this shipment) at around sixteen and seventeen cents. When the agent reported the rate to be sixteen and eight-tenths

cents per 100, he took the published rate and added forty per cent thereto. This agent testified that, in July, 1920, the regular rate on oil meal from Undercliff (which is the Edgewater station) to New Woodstock was twelve cents, and that a car of oil meal on July 8, 1920, was shipped at this rate. Thereafter and up to October twenty-sixth there was but one change, namely, a forty per cent raise in the rate. By adding forty per cent to the last published rate he determined the rate which he named to this defendant on October twenty-eighth, sixteen and eight-tenths cents. Plaintiff's witnesses have testified that there was no present published rate on oil meal from Undercliff to New Woodstock; that oil meal comes under the sixth grade of freight and they have figured out a rate from Edgewater to New Woodstock by adding together local rates on sixth grade freight between intermediate stations on connecting lines. There was a published rate on gluten, a by-product of a manufacture of starch from corn, and certain other commodities, of seventeen cents between these points; but no published rate for oil meal. Plaintiff's witnesses testified that, because the corn was shipped from the west and then the gluten was shipped back, more favorable rates were given on gluten than on some other commodities of the same grade; otherwise the starch factories would not be able to compete in prices. We are not satisfied with the testimony that the rate on oil meal should be thirty-one cents or more and think the court would have been justified in holding that seventeen cents was a proper rate. The defendant has not established that the freight rate charged, thirty-one cents per 100, was the correct rate. The defendant was justified in refusing to accept the meal.

The judgment should be affirmed, with costs.

All concur.

H. T. KELLOGG, J. (concurring):

An oral contract to sell goods of the value of fifty dollars or upwards is not " enforceable by action unless the buyer shall accept part of the goods,   *   *   *   and actually receive the same." (Pers. Prop. Law, § 85, subd. 1, as added by Laws of 1911, chap. 571.)  " There is an acceptance of goods within the meaning of this section when the buyer, either before or after delivery of the goods, expresses by words or conduct his assent to becoming the owner of those specific goods." (Pers. Prop. Law, § 85, subd. 3, as added by Laws of 1911, chap. 571.) The contract sued upon was for the sale of goods of the value of more than fifty dollars, and was not in writing. The goods were shipped in a railway car consigned to the defendant. It

is true that the delivery to a common carrier of goods sold ordinarily vests title in the buyer. This rule, however, presupposes the existence of an enforcible contract of sale. It does not apply where the enforcibility of the contract depends upon subsequent receipt and acceptance. (*Rodgers* v. *Phillips*, 40 N. Y. 519.) In that case Judge DANIELS said: " He [the buyer] must receive and retain the articles delivered, intending thereby to assume the title to them to constitute the acceptance mentioned in the statute; when that has been done, then, for the first time, the void contract becomes valid and obligatory upon the parties to it." The proof is clear that the defendant not only never received the goods, but that he never accepted them. He wired the plaintiff: " Too much freight, cannot accept." He afterwards caused the station agent to send a telegram to the plaintiff in which he stated that the overcharge was $106.30, and that the defendant " will accept car *if* check is mailed at once." The plaintiff never mailed the check. This clearly constituted no acceptance, for an acceptance sufficient to take an oral contract out of the Statute of Frauds must be *unequivocal and unconditional.* (*Drake Hardware Co.* v. *Dewitt*, 142 App. Div. 192; *Stone* v. *Browning*, 68 N. Y. 598.) It is immaterial that the defendant may have been mistaken as to the freight overcharges, and, therefore, may have based his refusal to accept upon false grounds. In the *Stone* case the following statement is quoted from Blackburn on Sales (p. *23): " If he [the buyer] refuses the goods, assigning grounds false or frivolous, or assigning no reasons at all, it is still clear that he does not accept the goods, and the question is not whether he ought to accept, but whether he *has* accepted them." The case of *Littlejohn* v. *Shaw* (159 N. Y. 188) is cited for the proposition that when a purchaser of goods refuses to accept delivery on a ground specified, he is deemed to have waived all other objections. The holding in that case is merely to the effect that a buyer of goods under a valid contract of sale, who rejects them as not equal to contract in certain particulars, cannot afterwards support his rejection by proof that in other particulars they were not equal. The reason for this holding is clear. A warranty of quality not in writing does not survive acceptance of goods delivered under a contract of sale. An acceptance of the goods is presumed unless prompt rejection is made. (*Pierson* v. *Crooks*, 115 N. Y. 539.) It naturally follows that in such a case goods are presumed to be satisfactory in all other respects than the particular respect stated for rejection. In the *Pierson* case (p. 547) Benjamin on Sales (§§ 701, 706) was quoted for the following rule as to the rejection of goods on the ground that they are not equal to contract: " For receipt is one thing and acceptance another; but

receipt will become acceptance if the right of rejection is not exercised within a reasonable time, or if anything be done by the buyer which he would have no right to do unless he were the owner of the goods." Clearly the rule of the *Littlejohn* case has no application here. This is not the case of a person who refuses to accept delivery under a binding contract; it is the case of one not bound by any contract except so far as that contract has been made valid by positive acceptance. The obvious difference between such persons is that the former is bound by his promise to accept unless he affirmatively *rejects,* while the latter is not bound at all unless he affirmatively *accepts.* There has been no affirmative acceptance in this action of any kind or nature. There was an expression of willingness to accept if certain things were done, but, those things never having been done, there was never any assent on the part of the defendant to become owner, which was sufficient to make the contract sued upon an enforcible one. For these reasons it seems to me that the judgment below should be sustained.

Judgment affirmed, with costs.