SAMUEL BROOM and Another, Copartners, Trading under the Firm Name and Style of BROOM & NEWMAN, Respondents, *v.* JOSEPH JOSELSON and Another, Copartners Trading under the Firm Name and Style of JOSELSON & SCHRECK, Appellants.

First Department, November 28, 1924.

Sales — action by sellers — Statute of Frauds — acceptance and actual receipt of goods within Personal Property Law, § 85, not shown — delivery by sellers to their own warehouse not delivery to buyer — contract on which no payment made, not in writing and signed by defendant, unenforcible.

Sellers of goods do not show acceptance of the goods and actual receipt of the same by the buyer, within section 85 of the Personal Property Law, by evidence that the buyer consented that the sellers should store the goods in their factory until a specified date, for the sellers cannot act as agents of the buyer in this respect, and, therefore, the contract on which no payment had been made, not being in writing and signed by the defendants, cannot be enforced.

APPEAL by the defendants, Joseph Joselson and another, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 5th day of December, 1923, upon the verdict of a jury, and also from an order entered in said clerk's office on the 8th day of December, 1923, denying the defendants' motion for a new trial made upon the minutes.

*Ferris & Ansbacher* [*Jacob Ansbacher* of counsel], for the appellants.

*John Bogart* [*Alfred R. Page* of counsel], for the respondents.

MARTIN, J.:

On January 26, 1920, plaintiffs' salesman Jaffee called to see the defendants at their place of business, No. 14 Avenue A. Jaffee testified that he had with him samples of flannel shirts for the fall trade and swatches of the different materials with plaintiffs' numbers thereon; that defendant Schreck examined the samples and swatches and selected three numbers; that he, Jaffee, entered the order in his book, which was arranged for entering orders in triplicate, with white paper for the original, as well as with yellow and pink copies for the duplicates; that he tore out all three sheets, retaining the white and yellow sheets and giving the pink one to Schreck. The defendants denied this transaction and also denied that they received a pink slip. The white and yellow sheets were introduced in evidence.

Jaffee further testified that he saw Schreck again on April 26, 1920; that he had with him the samples and swatches of cotton

for the fall trade and that he again went through the same procedure, Schreck selecting what he wanted, and he, Jaffee, entering the order in his book and delivering the pink slip to defendants. This was also denied by the defendants. The white and yellow sheets for this transaction were also put in evidence.

Jaffee admitted that he was working on a commission basis and that his commissions on these alleged sales depended upon the outcome of the litigation.

The plaintiffs assert that Jaffee called on the defendants at their request in the latter part of August, 1920, with reference to defendants taking in the goods covered by these alleged orders; that he also called on other occasions, and wrote letters to defendants regarding the same; and that the defendants made promises to take in the goods, including alleged telephone promises.

There were no letters or writings produced, which had been signed by or had emanated from the defendants. These alleged orders exceeded $7,500 in amount. It is admitted that the defendants were principally engaged in selling household furnishings, their dealings in shirts being only a side line. In this connection it is of interest to note that the purchases of shirts actually made by the defendants during this period amounted to $224.25 in October, and $10.50 in November, as shown by the invoices.

There being no payment on account and concededly no signed memorandum, it became necessary for the plaintiffs to prove an acceptance and actual receipt of the goods. They proceeded to prove an alleged constructive delivery. From plaintiffs' Exhibit 26 it appears that the defendants purchased goods amounting to ten dollars and fifty cents on November sixteenth, consisting of a small lot of goods which defendant Joselson says he visited plaintiffs' place of business to purchase, same being specially required for a customer.

Newman, one of plaintiffs, gave testimony which other witnesses substantially repeated, to the effect that he told Joselson on this occasion the plaintiffs would reduce the aggregate of the orders by $2,200 if the defendants would take the goods; that he then instructed his employees Hirsh Aber and Friedman to bring out several shirts of each number for Joselson's inspection, and Joselson after looking through these shirts submitted to him for inspection, said: " All right, they are my goods, I will take them but on account of room I cannot take them now, but I will take them on December 1st," whereupon, as he testified, he said: "All right, I will store them in the factory in Brooklyn." He further testified that the goods were then taken from bins in which they were stored.

The testimony shows that they were in the stock room in storage

bins kept therein and not, at that time, in the cases in which it is claimed they were later packed.

At this point all participation of the defendants in the alleged " actual receipt " of the goods ceased and thereafter, as it is asserted, the constructive delivery consisted of acts by plaintiffs. Although the plaintiffs say they wrote numerous letters to defendants and that the defendants promised to take the merchandise, yet the plaintiffs have no writing whatsoever showing the alleged arrangement.

Aber testified that the goods were packed into four cases which were marked with the defendants' firm name and address. One case so marked was produced in court by the plaintiffs and introduced in evidence. This witness further testified that instructions were given to the shipping clerk to ship the four cases to plaintiffs' Brooklyn factory and that there was a record of their actual shipment to Brooklyn.

Mohr, the shipping clerk, testified that the four cases were shipped to the Brooklyn factory. He was asked to look through the records which he produced for the receipt of the expressman to whom he said the goods were delivered for transportation to Brooklyn, but admitted he could find none. He finally admitted that the four cases were in the New York office for the past two and one-half years.

Friedman, on the other hand, testified that he saw the four cases in Brooklyn during 1921 and 1922, contradicting the shipping clerk.

Jaffee says the four cases remained in his employers' place of business from the time he first saw them, up to the time of the trial.

" The Court: They were in your employers' place? The witness: Yes."

On December 8, 1920, three weeks after the arrangement alleged to have been made on November sixteenth, the plaintiffs shipped the four cases to the defendants by a truckman and the defendants refused to accept them.

On October 28, 1920, two weeks before the alleged acceptance, the goods had also been rejected according to plaintiffs' letter of that date. One case was produced by the plaintiffs in court, and the other three cases are in the plaintiffs' possession.

The defendants say the evidence offered by the plaintiffs was, in essential features, fabricated to bring the case within certain decisions which were submitted to the court, to the effect that, if the buyer requests that the goods be shipped to his agent or to a warehouse for his account, a receipt by such agency may be a receipt by the buyer. The trial justice evidently believed that the sellers, through their Brooklyn factory, could act as agents

to receive the goods from themselves in New York for the account of the defendants; for he charged as follows: " If you find that to be the fact, then I say that is a compliance with the condition required in order to take the case out of the Statute of Frauds. That was a delivery to the defendants as much as if they had ordered them sent somewhere else. The law does not make arbitrary rules to regulate business men in their dealings with one another. The law adopts the customary dealings of honest business men with one another, and those are the rules of law I am now laying down for your guidance.

" It would be an unwarranted restraint upon the free transaction of business if, when you have a bill of goods due you and you have some place else to send it, that you would not be permitted to direct the person from whom you bought the goods, and who holds them subject to your order, to deliver them to Smith instead of to me, and that would not be a good delivery to you in compliance with the statute."

The Statute of Frauds as contained in section 85 of the Personal Property Law (as added by Laws of 1911, chap. 571) provides as follows:

" § 85. Statute of Frauds. 1. A contract to sell or a sale of any goods or choses in action of the value of fifty dollars or upwards shall not be enforceable by action unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the contract or sale be signed by the party to be charged or his agent in that behalf."

At the outset of this discussion it may be helpful to refer to a few very pertinent lines from *Young* v. *Ingalsbe* (208 N. Y. 503), where the court said: " The design of the statute requires that neither party can create the evidence which shall prove the unwritten contract as against the other." (*Rodgers* v. *Phillips,* 40 N. Y. 519; *Hinchman* v. *Lincoln,* 124 U. S. 38.)

In that case it was further said: " The rule of the common law that a mere contract for the sale of goods, where nothing remains to be done by the seller before making delivery, transfers the right of property, although the price has not been paid nor the thing sold delivered to the purchaser (*Olyphant* v. *Baker,* 5 Denio, 379; *Bissell* v. *Balcom,* 39 N. Y. 275) is devitalized by the statute in the cases within its provisions. In those cases the statute renders essential to the proof of a valid contract of sale, not only evidence of the verbal contract, but also evidence of a receipt and acceptance by the vendee of a part of the goods, or of a payment

at the time the oral agreement was made. The contract must be authenticated by a prescribed act of the parties in pursuance and part performance of it. The act may originate with the vendor or vendee; with the vendor if a delivery of part of the goods and their acceptance by the vendee is the ground for validating the contract; with the vendee if part payment is relied upon. In either case the participation and assent of both parties to it is necessary. The receipt of the goods by the vendee implies a delivery by the vendor. Delivery and receipt of the goods without acceptance is insufficient, and payment implies a receipt and acceptance of the consideration by the party to whom it is made. (*Hawley* v. *Keeler*, 53 N. Y. 114; *Pitney* v. *Glens Falls Ins. Co.*, 65 N. Y. 6, 26.)"

Although the Statute of Frauds (Pers. Prop. Law, § 31, subd. 6, repealed in part by Laws of 1911, chap. 571, §§ 2, 3) was definite and certain prior to the enactment of section 85 of the Personal Property Law (as added by Laws of 1911, chap. 571), it has been made more so by recent legislation. It now reads in reference to a receipt of the goods: "Actually receive the same."

Professor Williston in his work on Sales (2d ed. p. 146) says: "New York Rule. In a leading case in New York which has had great subsequent influence, the Court laid down a rule more stringent than that suggested in the preceding paragraph. Wright, J., said: 'The uniform doctrine of the cases, however, has been that in order to satisfy the statute there must be something more than mere words; that the act of accepting and receiving required to dispense with a note in writing implies more than a simple act of the mind.' It may be readily admitted that the last clause of this quotation is sound. The preceding clause, that mere words are necessarily insufficient, is not so clear. In the case itself the court held that lumber on a dock apart from other lumber could not, as matter of law, be received by the buyer though the dock was, apparently, a public or quasi-public place. The lower court had left the matter to the jury with the instruction, 'that if they were satisfied that it was the intention of the parties to consider the lumber delivered at the time of the bargain, and that nothing further was agreed or contemplated to be done in order to change the title in or possession of the lumber, the plaintiff was entitled to recover; that the sale was not within the Statute of Frauds and did not require any note or memorandum in writing, provided they should find from the evidence that there was a delivery and acceptance of the lumber at the time of the bargain.' The majority of the upper court held that the statute could not have been satisfied, since the alleged delivery consisted merely of words.

This decision and the rule on which it is based have been followed in New York and some other States." (See *Shindler* v. *Houston,* 1 N. Y. 261, 268.)

In *Ely* v. *Ormsby* (12 Barb. 570) the court said: " The statute in regard to acceptance, when the party depends upon that to render the sale valid, requires that acts unequivocal should furnish the evidence of such acceptance, and not words alone. The acceptance must be clear and unequivocal. The Court will not allow a constructive acceptance to be sufficient."

The seller may not evade the statute by merely asserting that he acted as agent for the buyer.

On the subject of such agency, Professor Williston, in his work on Sales, says (2d ed. pp. 152, 153): " Receipt of Goods in the Hands of Seller. As has been previously seen, acceptance cannot be made by the seller himself acting as agent for the buyer, and as will hereafter be seen one party cannot be the agent for the other to sign a memorandum under the statute. By analogy it might be supposed that the seller could not act as agent or bailee for the buyer in such a way as to constitute a receipt of the goods. Under what has been called the New York rule, which requires more than mere words in order to satisfy the statute, this result is practically reached; for where the seller holds possession of the goods after the sale for the buyer, there is generally no outward dealing with the goods to indicate the change of ownership; they simply remain where they have been, but the seller has agreed to hold them in a different capacity."

In *Caulkins* v. *Hellman* (14 Hun, 330) in which the right of a third person, agent of the seller to act for both the seller and buyer, was discused it was held that: " Where a contract for the sale of goods rests wholly in parol, and no part of the purchase money has been paid, a delivery of the goods to, and an acceptance thereof by the vendee being relied upon to take the sale out of the Statute of Frauds, the same person cannot act as the agent of both parties; that is, he cannot claim to act as the agent of the seller to negotiate the sale, and the agent of the buyer to receive and accept the goods."

In *Cooke* v. *Millard* (65 N. Y. 352) the court indicated what is meant by a receipt of goods: " The receipt of the goods is the act of taking possession of them. When the seller gives to the buyer the actual control of the goods, and the buyer accepts such control, he has actually received them. Such a receipt is often an evidence of an acceptance, but it is not the same thing. Indeed, the receipt by the buyer may be, and often is, for the express purpose of seeing whether he will accept or not."

This question of compliance with the Statute of Frauds must not be confounded with that relating to the passing of title under the Personal Property Law, which, in section 100, rule 4, subdivision 1, as added by chapter 571 of the Laws of 1911, provides as follows: "Where there is a contract to sell unascertained or future goods by description, and goods of that description and in a deliverable state are unconditionally appropriated to the contract, either by the seller with the assent of the buyer, or by the buyer with the assent of the seller, the property in the goods thereupon passes to the buyer. Such assent may be expressed or implied, and may be given either before or after the appropriation is made."

In *Kieser & Son Co., Inc.,* v. *Hallock* (201 App. Div. 186) the concurring opinion of Mr. Justice KELLOGG is both interesting and helpful: " An oral contract to sell goods of the value of fifty dollars or upwards is not ' enforceable by action unless the buyer shall accept part of the goods, * * * and actually receive the same.' (Pers. Prop. Law, § 85, subd. 1, as added by Laws of 1911, chap. 571.) ' There is an acceptance of goods within the meaning of this section when the buyer, either before or after delivery of the goods, expresses by words or conduct his assent to becoming the owner of those specific goods.' (Pers. Prop. Law, § 85, subd. 3, as added by Laws of 1911, chap. 571.) The contract sued upon was for the sale of goods of the value of more than fifty dollars, and was not in writing. The goods were shipped in a railway car consigned to the defendant. It is true that the delivery to a common carrier of goods sold ordinarily vests title in the buyer. This rule, however, presupposes the existence of an enforcible contract of sale. It does not apply where the enforcibility of the contract depends upon subsequent receipt and acceptance. (*Rodgers* v. *Phillips,* 40 N. Y. 519.) In that case Judge DANIELS said: ' He [the buyer] must receive and retain the articles delivered, intending thereby to assume the title to them to constitute the acceptance mentioned in the statute; when that has been done, then, for the first time, the void contract becomes valid and obligatory upon the parties to it.' The proof is clear that the defendant not only never received the goods, but that he never accepted them. * * *." (Citing *Drake Hardware Co.* v. *Dewitt,* 142 App. Div. 189, 192; *Stone* v. *Browning,* 68 N. Y. 598.)

It is asserted by the plaintiffs in this case that title passed, that the contract was an executed contract and, therefore, the Statute of Frauds does not apply.

The very purpose of the Statute of Frauds is to prevent liability to pay for goods which it is sought to force upon an alleged buyer by oral testimony created for the purpose. Here the plaintiffs

are endeavoring to avoid the force of the statute by evidence which, to say the least, is doubtful. Although it is true title passes in some instances when there is a delivery to a carrier or a setting aside of the goods, that is not always determinative where there is a question as to compliance with the Statute of Frauds. The statute expressly provides that contracts of a stated class shall not be enforcible unless certain things have been done. A contract which is perfectly good, in the sense that all contractual essentials are present, may be unenforcible because of the Statute of Frauds. In this case we believe that an enforcible contract such as will satisfy the Statute of Frauds was not proved.

The judgment and order should be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., DOWLING, FINCH and McAVOY, JJ., concur.

Judgment and order reversed, with costs, and complaint dismissed, with costs.