DORIAN HOLDING AND TRADING CORPORATION, Respondent, *v.* BRUNSWICK TERMINAL AND RAILWAY SECURITIES COMPANY, Appellant.*

First Department, November 7, 1930.

* Revg. 136 Misc. 525.

*Samuel C. Steinhardt* of counsel [*Elbert M. Somers, Jr.,* with him on the brief], for the appellant.

*Alexander T. Hussey* of counsel [*Clarence F. Hussey* with him on the brief], for the respondent.

SHERMAN, J. Damages are claimed by plaintiff arising from defendant's refusal to perform an alleged agreement for the sale by it to plaintiff of shares of its capital stock theretofore unsubscribed for. Defendant's answer pleads a general denial and, as a separate defense, the Statute of Frauds. Plaintiff was required by a court order to serve its bill of particulars setting forth the writing upon which it relies to defeat that defense. In compliance with this order plaintiff sets forth a letter written by it to defendant, wherein it agreed to purchase shares of defendant's capital stock. That letter is signed by plaintiff. Defendant's name appears only as the addressee of the communication. Defendant did not sign it. Plaintiff, however, averring that the letter was " dictated and prepared by the president of the defendant corporation," claims that the addressee's name is under these circumstances to be regarded as a signature, meeting the statute's requirements.

The learned Special Term has denied defendant's motion for judgment dismissing the complaint on the pleadings upon the separate defense of the statute, and has held that its name as addressee of that letter constituted the signature required by section 85 of the Personal Property Law (as added by Laws of 1911, chap. 571, the Sales of Goods Act), known as the Statute of Frauds, or at any rate that such a conclusion may be reached at trial. The correctness of this determination is the sole question presented upon this appeal.

The text of the original Statute of Frauds enacted during the reign of Charles II in 1676, effective June 24, 1677, sets forth in its opening paragraph, the widespread evil against which it was directed, viz., " for prevention of many fraudulent practices, which are commonly endeavoured to be upheld by perjury and subornation of perjury." (29 Car. II, chap. 3.)

That statute, with minor changes, has been adopted throughout the United States to avert the abuses which it was designed to prevent.

By requiring a signature it was thought that the contract would be authenticated, so as not to rest in parol, and to that extent the fabrication of evidence by which unjust recoveries might be achieved would be thwarted. The signature of the party to be bound or his duly authorized agent is indispensable. As stated by CARDOZO, Ch. J., in *Mesibov, Glinert & Levy* v. *Cohen B. Mfg. Co.* (245 N. Y. 305, at p. 310): " A signature, however, there must be, and a name, written or printed, is not to be reckoned as a signature unless inserted or adopted with an intent, actual or apparent, to authenticate the writing." It was also held that whether or not such an intent is to be inferred depends upon whether " the setting of the occasion gives fair warrant for the inference that it was so intended or adopted " (p. 310). The printed order blank in that case contained the vendor's name (or rather that of its predecessor firm) at its head and it was urged that this printed heading constituted a signature satisfying the requirement of the statute. The blank had been partially filled out by defendant, but the space reserved for acceptance of the order remained blank. Plaintiff was not successful, that memorandum being held insufficient. From the paper itself, its acceptance blank being unfilled, the inference that defendant had adopted its printed name as its signature to the contract could not be drawn. " The defendant must have intended not merely to contract, but to sign " said the court (p. 311), and in its opinion took occasion to review the English authorities and to observe that in the English courts " the rule, it seems, is laxer than with us " (p. 311).

We are referred to no authority in this State holding with plaintiff that a defendant may be deemed to have affixed his signature to a writing by merely preparing and dictating a letter addressed to himself, there being no token of authentication placed upon it by defendant. Such a determination would open the door to an influx of unfounded actions and the safeguard erected by the statute would be swept away. Unscrupulous dealers would be led to claim that writings signed by them were prepared by the parties upon whom they sought to fix liability. The act of preparation could be proved only by oral testimony, and, if allowed, the alleged contract, instead of being authenticated by a writing, as required by the statute, would depend for its enforcibility upon the uncertain and conflicting recollections of witnesses testifying to its origin. The operation of the statute would be effectually nullified. Such a holding is subversive of the theory underlying

the numerous decided cases upholding and applying this provision of the Statute of Frauds in this State and elsewhere in the United States.

The only case to which we have been referred where a plaintiff has succeeded upon a letter addressed by him to the defendant is *Evans* v. *Hoare* (L. R. [1892] 1 Q. B. 593; 66 L. T. Rep. 345.) There, defendants by their clerk under their authority wrote a letter, presented it to plaintiff for signature, and caused it to be signed by him, as follows (p. 595):

"Messrs. HOARE, MARR & Co., 26, 29 Budge Row, London, E. C.

"GENTLEMEN.— In consideration of your advancing my salary to the sum of 130 *l.* per annum, I hereby agree to continue my engagement in your office for three years, from and commencing January 1, 1890, at a salary at the rate of 130 *l.* per annum aforesaid, payable monthly as hitherto.

"Yours obediently,
"GEORGE E. EVANS."

Plaintiff had then been working for defendants for four years. During the term as extended by this letter plaintiff was dismissed from defendants' service. The letter was authenticated, being written by defendant's agent, and it contained defendants' name when tendered to plaintiff for signature, which was held to satisfy the Statute of Frauds and a recovery was allowed.

That case was grounded upon *Schneider* v. *Norris* (2 M. & S. 286), where the contract was signed only by plaintiffs, but defendants wrote some part of the document so that there was a clear recognition and adoption by defendants of their printed name upon their contract blank as a signature, which act, in the language of one of the concurring justices, " authenticates it as a memorandum of the bargain."

These cases are analyzed in *Hucklesby* v. *Hook* (82 L. T. Rep. 117) where BUCKLEY, J., deduces that they rest upon the principle that signing for the purpose of the statute did not necessarily mean writing a name but embraced ratifying by writing in some form or other, the document containing the contract, and the printed heading upon an order blank could be held to have been appropriated by a party as his signature.

Even under the " laxer rule " countenanced in England some physical authentication or adoption of the contract is necessary. The signing required by the statute is a signature to the memorandum, placed there or adopted or appropriated with the intention of authenticating the writing. The courts of this State have thought it better to enforce the prohibition of the statute,

with a fair degree of strictness, rather than commit to a jury the right to find compliance with it, in cases where the instrument itself contains nothing which would tend to authenticate the writing by the signature, in some form, of the party to be bound. An order blank upon which defendant has caused its name to be printed is in itself of evidentiary value tending to authenticate the paper, as emanating from defendant, because defendant had physically placed its printed name upon it; the form of the order blank indicates its proposed use to embody a contract to be made by a defendant who might adopt the printed name instead of signing it anew. At any rate, the paper itself, particularly when there is a writing thereon by defendant or his authorized agent, or it has been filled out by defendant, becomes the basis of such an inference, so that the statute was held to have been satisfied in many cases where the defendant's written signature was absent. (*Lezinsky Co., Inc.,* v. *Hoffman,* 111 Misc. 415; affd., 194 App. Div. 954; *Pearlberg* v. *Levisohn,* 112 Misc. 96; *Cohen* v. *Wolgel,* 107 id. 505; affd., 191 App. Div. 883; *Goldowitz* v. *Kupfer & Co.,* 80 Misc. 487.) A letter on the other hand is ordinarily the product, not of the addressee, but of the writer whose offer or engagement it carries. Here the content of the paper is said to have been dictated by an officer of defendant. Its name was not physically put upon the paper by defendant. There is an important difference between the act of dictating and that of writing which must not be lost sight of in determining the question whether the statutory requisite of authentication by signature exists. Ordinarily, if an addressee of a letter desires to authenticate the agreement therein contained, he does so by signing it, and the law is not asking too much in requiring that a plaintiff who seeks a recovery of a purchase price or damages for breach of an alleged contract of sale should see to it that the party to be bound does, by placing thereon his written signature or other adequate token, authenticate it. Originating the text of a proposed letter is a different act from affixing a signature to a contract. The one is but a step toward the making of a contract, whereas the signature is intended to complete its formation.

Nor can one party be the agent of the other for the purpose of affixing a signature to the contract or memorandum required by the statute, so that the name of the defendant placed at the head of the letter by the plaintiff may not be said to have been so placed by defendant's authorized agent. (*Wilson* v. *Lewiston Mill Co.,* 150 N. Y. 314; *Broom* v. *Joselson,* 211 App. Div. 157; *Lezinsky Co., Inc.,* v. *Hoffman, supra; Wright* v. *Dannah,* 2 Camp. 203; Williston Sales, § 114.)

As stated in Browne on the Statute of Frauds (5th ed. § 367):

" The statute does not require the party's own signature to the memorandum but allows it to be signed by 'some other person thereunto by him lawfully authorized.' * * * One rule, however, has been settled both under the fourth and seventeenth sections█ that neither party can be the other's agent to bind him by signing the memorandum."

The order appealed from should be reversed, with ten dollars costs and disbursements, and defendant's motion for judgment dismissing the complaint on the pleadings granted, with ten dollars costs.

DOWLING, P. J., MARTIN and O'MALLEY, JJ., concur; MERRELL, J., dissents.

MERRELL, J. (dissenting). I dissent and vote for affirmance of the order denying defendant's motion for dismissal of plaintiff's complaint on the pleadings. In my opinion the admitted dictation of the letter in question by defendant's president, and addressed to the defendant in name, sufficiently met the requirements of the Statute of Frauds, and that the defendant was legally bound thereby. Such use of defendant's name by defendant's president was clearly inserted and adopted with an intent " to authenticate the writing * * * The setting of the occasion gives fair warrant for the inference that it was so intended or adopted." (*Mesibov, Glinert & Levy* v. *Cohen B. Mfg. Co.*, 245 N. Y. 305, 310.)

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.