Abraham N. Geller, J.
Plaintiff seeks a permanent injunction restraining defendant Hirsch, doing business as Manhattan Vending Co., from interfering with the contract allegedly existing between plaintiff and defendant Al & Ab’s Ideal Restaurant & Tavern, Inc., and damages from both defendants. (Hirsch died during the pendency of the action and his administrator has been substituted in his place.)
Plaintiff claims that the restaurant corporation entered into a contract dated December 9, 1957 giving it the exclusive right for a term of three years to operate and maintain in the premises of the restaurant corporation a coin-operated phonograph, commonly known as a juke box. It would appear from certain of the business practices followed by plaintiff, that some of the *366 issues in this case transcend the particular controversy between the parties herein and affect others in, or dealing with, the juke box industry. Plaintiff’s juke box had been originally installed in this tavern when it was individually owned and operated by one Alex Moskowitz. It is alleged that defendant Hirsch induced the codefendant restaurant corporation to remove plaintiff’s box on May 1, 1958 and to install his juke box.
In its answer the restaurant corporation denied that it had entered into said contract. At the trial it vigorously challenged, by the testimony of the alleged signer himself as well as that of an expert, the genuineness of the signature appearing thereon of Alex Moskowitz, the former proprietor who had sold the restaurant some time in the period of August through November, 1957 (the papers were executed and held in escrow pending the receipt of approval of the transfer by the State Liquor Authority) to this corporation, newly formed by himself and another. Moskowitz took a 50% stock interest in said corporation but sold his shares to another in April, 1958 and thereafter retained no financial interest in the restaurant corporation.
Plaintiff, of course, has the burden of establishing by a fail-preponderance of the credible evidence that the contract was executed by the defendant corporation.
It appears that Moskowitz had, during the years of his individual proprietorship, signed several of plaintiff’s “ juke box ” contracts. Particular terms of payment and duration were filled in by plaintiff on its printed contract forms. At the time of incorporation of the restaurant corporation there were, surprisingly, two such outstanding contracts, one dated August 5, 1953 for a period of “ 5 ” years with a “ 50/50 ” division of the proceeds of the juke box operation and a minimum of “ Ten ” dollars per week to plaintiff; and another dated July 3, 1956 for “ 3 ” years with a “ 50/50 ” division but no minimum filled in.
Moskowitz testified that he was entitled to receive a $50 bonus annually which, however, had been paid only in certain years. On the other hand, plaintiff’s employee, its “ solicitor and adjuster,” testified that such bonus was given for signing a contract. However, Moskowitz did not receive a $50 bonus at the time of signing the 1953 contract but did receive one at the time of signing the 1956 contract. Since at that time the 1953 contract had about two more years to run, it would seem that Moskowitz was asked to sign one of plaintiff’s readily available blank contract forms on July 3, 1956 as a pretended basis for paying him the $50 bonus check delivered to him on that day and -¡yith no intention that it sunersede the 1953 contract. Plaintiff *367 did not even bother later to fill in its usual terms in the contract form.
Plaintiff’s solicitor testified that on September 21, 1957, after the restaurant corporation had been organized but before the transfer had been approved by the State Liquor Authority, he delivered a $50 bonus check to Moskowitz who, on the hood of an automobile and in his presence, signed his name in blank on one of plaintiff’s form contracts. He further testified that Moskowitz then authorized the filling in by plaintiff (after approval of the restaurant corporation by the State Liquor Authority) of the same terms and conditions of the other contract.” Moskowitz was at that time a 50% stockholder and an officer of the corporation. Plaintiff thereafter, on December 9,1957 (the liquor license had been issued on November 1,1957), filled in the corporate name in the body as well as above Moskowitz’ purported signature and the following terms: “ 50/50 ” with a minimum to plaintiff of “ $20.00 ” per week for a period of “ 3 ” years. It will be noted that none of the other alleged contracts provided a minimum of $20 per week to plaintiff.
Moskowitz testified that he had not at any time signed the agreement dated December 9, 1957, that his signature thereon was a forgery, that he had not entered into any agreement on behalf of the corporation or given any such authorization as claimed by plaintiff, and that the 1957 check was merely the annual bonus payment promised to him.
The testimony of these two witnesses is in complete conflict. Moskowitz made a more favorable impression than plaintiff’s witness, but neither was Moskowitz’ testimony entirely satisfactory. Nor was resolution of the issue of forgery advanced by the conflicting opinions given by the handwriting experts retained by the respective parties. Plaintiff’s expert found that it was within the normal range of variation of Moskowitz’ writing style, while defendants’ expert found such abnormal variations and clear imitative patterns as to indicate to him that a forgery had been perpetrated. The court’s own study, in conjunction with the detailed testimony given by both experts, of the numerous exhibits in the case and the photographs prepared by the experts, did not produce any definite conviction as to whether the signature was or was not genuine.
Accordingly, plaintiff must be held to have failed to meet the burden of proof on the primary issue of the execution of the contract in question.
Actually, there are several tangential elements which tend in their cumulative effect to tip the scales against plaintiff’s version.
*368 On plaintiff’s motion for a temporary injunction (15 Mise 2d 43) its moving affidavit (sworn to by its president, Charles Bernoff) referred to the contract, a copy of which was annexed, as having been “ entered into ” on December 9,1957, later amplified as ‘ negotiated [by Moskowitz] with plaintiff on December 9, 1957.” Defendants submitted the answering affidavit of Moskowitz, who stated “ flatly and without reservation ” that he had never signed any such agreement. Plaintiff then submitted a lengthy replying affidavit, also executed by Charles Bernoff, who testified at the trial that he had informed plaintiff’s attorney of all the facts concerning Moskowitz ’ signing of the contract on September 21, 1957 in the presence of its solicitor, but there is no reference whatsoever in said affidavit to the alleged signing on September 21, 1957, nor was an affidavit of the solicitor submitted on the motion to support plaintiff’s claim that Moskowitz had signed the contract. It is apparent, therefore, that either plaintiff did not fully and fairly apprise the, court of all the facts pertinent to the vital issue then presented on its motion for drastic relief, or that the story of the September 21, 1957 signing by Moskowitz was an afterthought conveniently fixing the signing as having taken place on the day when Moskowitz received the $50 bonus check. In any case, plaintiff’s proof must be viewed with misgivings and doubts.
It also seems strange that when Moskowitz referred in his answering affidavit to his last contract as the June, 1956 contract, plaintiff replied that he, Moskowitz, was confused, since his last prior contract was the 1953 contract. At the trial plaintiff attempted to correct its position, claimed that the 1956 contract had been misfiled and made a motion to add a second cause of action based on that contract. Plaintiff’s acts with respect to the 1956 document create considerable doubt as to whether plaintiff itself intended that it should constitute a subsisting contract.
The confusion and doubt engendered by plaintiff’s procedure in obtaining contracts, here shown, are increased by its practice, admitted on trial, of having customers sign contracts in blank and failing to give them copies thereof. Such a practice must be condemned not only as basically unfair but also as conducive to fraud. Plere the evil was especially marked. Assuming plaintiff’s own version, Moskowitz had merely signed his own name, but received no copy of the contract. Plaintiff claims that more than two months later it filled in the corporate name and the terms of the contract. Plaintiff’s business conduct throughout this transaction does not enhance its position with respect to the issue of the validity of the December 9 contract.
*369 Moreover, there was no proof of Moskowitz’ authority to enter into the December 9 contract on behalf of the defendant corporation. At best, he simply signed his own name without indication of corporate office or corporate name. Such a signing in blank would be consistent with plaintiff’s apparent practice of obtaining a signature on its printed form contract whenever it gave the annual bonus check without any real intention at the time to consider it a contract.
Furthermore, the provision inserted by plaintiff in the 1957 contract which increased in its favor the minimum to be first paid to it out of the proceeds of the juke bos, is a deviation from the alleged authorization to it to fill in the “ same terms and conditions of .the other contract ” as testified to by plaintiff’s witness. Thus, not even on plaintiff’s version can the contract be regarded as authorized by and binding upon the corporation.
Finally, members of an association of juke box operators, of which plaintiff is also a member, were produced as witnesses for the plaintiff to show that defendant Hirsch had knowledge that plaintiff had an exclusive contract for a juke box to be operated at the tavern in question. Their testimony did not establish this fact. It merely indicated that there may have been an allocation of locations and that they were, in effect, complaining about the invasion of the particular location by defendant Hirsch.
Since plaintiff has failed to meet its burden of proof in establishing the existence of a valid and binding contract with the restaurant corporation, the complaint, insofar as it is based upon the December 9, 1957 contract, must be dismissed on the merits.
The cause of action based on the December 9, 1957 contract, even on plaintiff’s version of the facts, would have been, in any event, dismissible on the ground of the Statute of Frauds. The contract covers a period of three years and obviously falls within the statute (Personal Property Law, § 31). To comply with the statute it was necessary that there be a memorandum setting forth the essential terms of the agreement signed by the party to be charged — the restaurant corporation. Assuming that Moskowitz signed the contract, plaintiff’s authority to affix the corporate name and to fill in its essential terms depend entirely upon parol testimony offered by plaintiff.
Although research has not revealed a case directly in point, there is abundant and eminent authority for holding that plaintiff’s own version of the transaction fails to satisfy the requirements of the statute.
*370 First, it is clear that one party to a transaction, even though authorized to do so, cannot be the agent of the other party to sign the memorandum of a contract which falls within the provisions of the Statute of Frauds (Restatement, Contracts, § 213, subd. [1]; Wilson v. Lewiston Mill Co., 150 N. Y. 314; Dorian Holding & Trading Corp. v. Brunswick Term. & Ry. Securities Co., 230 App. Div. 514, affd. 256 N. Y. 674).
The rationale underlying this principle is set forth in Corbin on Contracts (Yol. 2, § 525, pp. 779-780): “In the making of an ordinary written contract, the signature of either party can be validly inscribed by the other party if the latter is authorized by the first to do so. The decisions have established an exception to this rule in the case of contracts within the statute of frauds; they hold that the signature of a party is not sufficient to bind him if it is inscribed by the other party, even though the latter acted with the express authority of the former. This is a clear addition to the statute by judicial action. The reason for this addition appears to be the fact that without it the purposes of the statute could easily be defeated by fraud and perjury. One party could draft a memorandum of a contract, sign the other party’s name, and then enforce it by giving parol testimony that he was authorized.”
This reasoning applies with equal force to a transaction where one party signs in blank (and even more so, where the other party, such as plaintiff herein, subsequently changes such a signing from an individual into a corporate obligation) and the other party fills in the essential terms, giving parol testimony that he was authorized to fill in such terms.
In Wilson v. Lewiston Mill Co. (supra, p. 325), the court observed that the purpose of the statute in preventing frauds could be frustrated if “ a party, or his agent, could prepare the memorandum in his own interest and then by his oral testimony establish its validity as against the opposing party.”
The applicable rule is set forth in Restatement of Agency (§ 24): “ One party to a transaction can be authorized to act as agent for the other party thereto, except for the purpose of satisfying the requirements of the Statute of Frauds.” (Emphasis supplied.)
The exact point here involved is discussed in Williston on Contracts (Rev. ed., Yol. 2, § 585, p. 1686): “ Where attempt is made to authorize the other party to the contract to fill in the blanks, an insuperable difficulty arises. As will be seen, one party to a contract cannot make the other his agent to execute a memorandum. An agency to fill in blanks seems in effect the same thing. At the time the signature is made it does not *371 authenticate the memorandum, and unless the blanks are filled in by someone, himself capable of signing the document effectually, so that his adoption of the signature already there may he regarded as a signing at that time, there can be no signed memorandum. ’ ’
It must accordingly be held that since there was no memorandum signed on behalf of the corporation in compliance with the statute, this cause of action would, even on plaintiff’s version, be dismissible on that ground.
The second cause of action was added at the trial and is based on Moskowitz’ 1956 contract. Plaintiff relies on the printed clause providing that the agreement “ shall bind the parties and their assigns ’ ’ and that the proprietor agrees ‘ ‘ to provide for the assumption of this agreement by the new purchaser.” Moskowitz is not a defendant in this action and the question of his liability under this clause is not involved. The sole issue is whether the restaurant corporation, as the new purchaser, is liable thereunder to the plaintiff. There was no evidence whatsoever of any assignment to, or assumption by, the corporation of this agreement. This cause must therefore he dismissed for failure of proof.
The disposition herein made makes unnecessary the determination of defendants’ motion, on which decision was reserved, that plaintiff elect on which of the two causes of action it is proceeding.
This opinion constitutes the decision of the court pursuant to section 440 of the Civil Practice Act.
Judgment is accordingly directed for defendants dismissing both causes of action on the merits.
Settle judgment.