122 Cal.Rptr.2d 358 (2002)
28 Cal.4th 665
49 P.3d 1093
ESTATE OF Austin D. STEPHENS, Deceased.
Katherine Stephens Vohs, Petitioner and Appellant,
v.
Scott Williams, as Cotrustee, etc., et al., Claimants and Respondents.
No. S095401.
Supreme Court of California.
July 25, 2002.
*360 E. Michael Ambrosi for Petitioner and Appellant.
Law Offices of Roger P. Sprigg and Roger P. Sprigg, Tustin, for Claimants and Respondents.
*359 MORENO, J.
This matter involves a petition under the Probate Code seeking the return of real property to the deceased's estate. Prior to his death, the deceased orally instructed his daughter to sign his name on a grant deed that vested title to his residence in himself and her as joint tenants; she did so outside of his presence and he later orally ratified the conveyance. We granted review to decide whether the transfer was valid. As discussed herein, we conclude the transfer was valid.

I.
In 1978, Austin David Stephens (Austin) and his wife, Thelma, executed crossover wills, which provided that when they passed away all their real and personal property would be equally divided between their children, Lawrence Stephens (Lawrence) and Shirley Williams (Shirley).
In 1983, Thelma became seriously ill with cancer. Shirley drove her mother to every chemotherapy treatment and gave her around-the-clock care for five years. Shirley, who lived just two houses from her parents, installed an intercom linking their bedrooms so her mother could reach her at any time. At the same time, Shirley held two jobs. She worked in the daytime as a switchboard operator and in the evening as a cocktail waitress.
Soon after Thelma died in 1988, Austin's health began to suffer. Over the next six years, he had over 170 doctor visits and was hospitalized several times as a result of diabetes, a heart attack, prostate cancer, lip cancer, high blood pressure, glaucoma, and ear and eye surgeries. Shirley, as she did with her mother, took care of her father. She fixed him three meals a day, cleaned his pool and house, washed his clothes, watered his plants, purchased his groceries, gave him daily insulin shots, arranged his medical appointments, purchased his prescriptions, completed his insurance paperwork, medical forms and tax returns, paid his bills and cared for his pets.
Unlike Shirley, Lawrence was not involved in the daily activity of caring for his father. In August of 1989, Lawrence moved from California to Colorado to retire. Thereafter, he visited his father once or twice a year.
Austin began to lose his eyesight from glaucoma. In 1989, he executed a durable power of attorney, naming Shirley his attorney-in-fact. The document specified that she had the power to sell, convey, and transfer his real property. By 1990, Austin was blind and relied on Shirley to read documents for him. In 1991, Austin decided to make a gift of his home to Shirley due in part to her caring for him as well as Lawrence's departure to Colorado at a time when Austin felt he needed help.
A grant deed was typed by Agnes Stephens, who was Lawrence's ex-wife and Shirley's coworker. The deed vested title in Austin and Shirley as joint tenants. Austin's name and address were typed on the deed for return by mailing after recording. Following preparation of the deed, Austin verbally instructed Shirley, in the presence of Austin's best friend and *361 neighbor, Delbert Catron, to sign his name to the deed. Shirley followed her father's instructions. She executed the deed and had it notarized. Austin was not present at the time Shirley signed the deed.
The trial court determined that, after the deed was executed, Austin "orally and expressly" ratified Shirley's signing of his name to the deed. The trial court stated: "a. Shirley immediately told Austin of each step of the execution, notarization, forwarding of the deed to the County Recorder's office for recording, and return of the deed to him after recording. At each of these steps Austin verbally acknowledged to Shirley that that was what he wanted to happen and instructed her to proceed with the next step. [¶] b. While the deed was with the County Recorder's office for recording, Austin personally received a telephone call from a person from the County of Orange who inquired as to whether Austin intended the transfer of the real property to be a gift to Shirley. Austin told the caller that that was his intent. [¶] c. After the deed was recorded it was mailed to Austin's residence, at which time he verbally acknowledged receiving it and instructed Shirley to place it in safekeeping. [¶] d. Subsequent to the recording of the deed, Austin had several conversations with Mr. Catron in which he told Mr. Catron that Shirley had followed his instructions and executed the deed. [¶] e. Around Christmas 1991, subsequent to the recording of the deed, Austin traveled to Florida where he stayed for several weeks or months to visit his brother, James Franklin Stephens. During that visit he repeatedly told his brother that he was angry with Larry for leaving California, that he had nothing but praise for Shirley for taking care of him, and that he had `disinherited Larry.'"
The trial court also determined that Austin was at all times thereafter mentally competent and capable of taking action to disavow the validity of the deed if that was his desire, but that he did not do so despite his knowledge of the execution, notarization, and recording of the deed.
Within a few weeks of Austin's death in 1994, Lawrence filed a petition for probate of the will and a petition to determine title and require transfer of the property to the estate pursuant to Probate Code former section 9860, subdivision (a)(4). Lawrence died before trial, but his daughter, Katherine Stephens Vohs (Katherine), continued with the litigation as his successor in interest (Code Civ. Proc., §§ 377.31 & 377.32), and filed an amended petition.
After a court trial, the trial judge declared Shirley the sole owner of Austin's property under the "amanuensis" rule, which provides that where the signing of a grantor's name is done with the grantor's express authority, the person signing the grantor's name is not deemed an agent but is instead regarded as a mere instrument or amanuensis of the grantor, and that signature is deemed to be that of the grantor. (See generally Ledford v. Hubbard (1926) 219 Ky. 9, 15, 292 S.W. 345, 348, and cases cited therein; Lukey v. Smith (1961) 77 Nev. 402, 365 P.2d 487, 488-489].)[1]
The trial court stated: "Shirley's signature of Austin's name was a purely ministerial, mechanical act and was not an exercise by Shirley of any authority under the power of attorney. The signature is therefore *362 deemed to be that of Austin made by the hand of Shirley, and not the signature of Shirley as an authorized agent under the power of attorney or otherwise as a fiduciary. In so signing the deed, Shirley was not exercising any authority [under the power of attorney], and therefore did not exceed any authority. By virtue of Austin's antecedent instruction to Shirley and his subsequent ratification, the signature on the deed is deemed to be Austin's as a matter of law, meeting the requirement of [Civil Code section 1091] that a deed be executed by the grantor."
Katherine appealed. During the appeal's pendency, Shirley passed away. Her children continued to defend the lawsuit. (Code Civ. Proc., § 377.40; Prob. Code, § 58.) The Court of Appeal reversed. It held that under Civil Code section 2309, Shirley's authority to execute the deed as Austin's agent had to be in writing. As Shirley's written authority was derived from a durable power of attorney, Shirley could not convey the property to herself as a gift. Moreover, Austin's oral ratification of the deed was insufficient because Civil Code section 2310 requires that such ratification be in writing. Finally, the Court of Appeal rejected the amanuensis theory because the deed was admittedly not signed in Austin's presence.
The Court of Appeal reached its decision reluctantly: "The record is clear [that] Austin desired to give his home to Shirley to thank her for all her selfless giving, continuous help and love. Sadly, Austin and Shirley failed to comply with legal formalities necessary to carry out Austin's wishes."
We granted review; we now reverse.

II.
The Court of Appeal correctly determined that Shirley was not authorized to sign the deed as Austin's agent. A deed is a written instrument conveying or transferring the title to real property; it is an executed conveyance and operates as a present transfer of the real property. (3 Miller & Starr, Cal. Real Estate (3d ed. 2000) Deeds, § 8.1, p. 5 (Miller & Starr).) As a deed is "an executed contract, it is subject to the rules applicable to contracts." (Ibid.; see also Civ.Code, § 1040; Johnston v. City of Los Angeles (1917) 176 Cal. 479, 485-86, 168 P. 1047 [deeds must be read like any other contracts].)
An agent's authority to execute a deed on behalf of a principal must be conferred in writing. Civil Code section 1091 provides, in pertinent part: "An estate in real property ... can be transferred only by operation of law, or by an instrument in writing, subscribed by the party disposing of the same, or by his agent thereunto authorized by writing."
Moreover, the "equal dignities" rule of Civil Code section 2309 (section 2309) provides that a principal's oral authorization to an agent "is sufficient for any purpose, except that an authority to enter into a contract required by law to be in writing can only be given by an instrument in writing." The deed in this matter, as a present transfer of property, fell squarely within this rule. (See 3 Miller & Starr, supra, Deeds, § 8.27, p. 52 ["In general, if some other person executes a deed on behalf of the grantor, the grantor's authorization must be in writing."].) Shirley did not have written authority to execute the deed as Austin's agent. The transfer was thus not authorized by section 2309.
While Shirley had written authority from Austin in the form of a power of attorney, that document specified that she had only the power to sell, convey, and transfer his real property. By law, she lacked authority to convey the property to herself as a gift. "A power of attorney *363 conferring authority to sell, exchange, transfer or convey real property for the benefit of the principal does not authorize a conveyance as a gift or without substantial consideration [citations]; and a conveyance without the scope of the power conferred is void." (Shields v. Shields (1962) 200 Cal.App.2d 99, 101, 19 Cal.Rptr. 129.)
Nor was the gift authorized by Probate Code section 4264, which provides that a power of attorney may not be construed to grant authority to an attorney-in-fact to "[m]ake or revoke a gift of the principal's property in trust or otherwise" unless such act is "expressly authorized in the power of attorney." (Prob.Code, § 4264, subd. (c).)
Respondents concede that Shirley lacked written authority to execute the deed, but argue that Austin subsequently ratified her execution of the deed by his oral statements to others. This argument is not persuasive. To be valid, any such ratification must have been made in writing; oral ratification was insufficient.
"Ratification is the voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person, the effect of which, as to some or all persons, is to treat the act as if originally authorized by him. [Citations.]" (Rakestraw v. Rodrigues (1972) 8 Cal.3d 67, 73, 104 Cal. Rptr. 57, 500 P.2d 1401.)
However, the equal dignities rule of Civil Code section 2310 (section 2310) provides that a ratification of an agent's act "can be made only in the manner that would have been necessary to confer an original authority for the act ratified." In other words, just as an agent's authority to execute a deed must be in writing, so also must a principal's ratification of an invalid execution be in writing. "A grantor cannot ratify and accept the execution of the [deed] instrument by the third party orally. Ratification by the grantor of the prior execution of the deed must be in writing." (3 Miller & Starr, supra, Deeds, § 8.27, p. 52.) Our cases, going back more than a hundred years, have affirmed this rule. For example, in Videau v. Griffin (1863) 21 Cal. 389, 391 (Griffin), we held that where a deed is executed by an attorney without written authority, no subsequent parol acknowledgment by the principal will make that conveyance valid.
Respondents also urge that sections 2309 and 2310 are inapplicable because, even if Shirley acted as Austin's agent, her execution of the deed involved a claim solely between her and Austin, and claims between a principal and agent fall outside sections 2309 and 2310. In support, they cite two of our cases: Sunset-Sternau Food Co. v. Bonzi (1964) 60 Cal.2d 834, 36 Cal.Rptr. 741, 389 P.2d 133 (Sunset-Sternau), where we refused to apply section 2309 to an oral contract between a principal and agent; and Rakestraw v. Rodrigues, supra, 8 Cal.3d 67, 104 Cal.Rptr. 57, 500 P.2d 1401, where we refused to apply section 2310 to an oral ratification between a principal and agent. Their reliance is misplaced.
In Sunset-Sternau, an agent sued its principal for refusing to execute a contract that it had negotiated on the principal's behalf. (Sunset-Sternau, supra, 60 Cal.2d at pp. 836-837, 36 Cal.Rptr. 741, 389 P.2d 133.) In Rakestraw, the principal, whose signature was forged onto a promissory note, sued her former friend on the theory that he aided the purported agent (the principal's husband) in the forgery. (Rakestraw v. Rodrigues, supra, 8 Cal.3d at pp. 70-71, 104 Cal.Rptr. 57, 500 P.2d 1401.) In Sunset-Sternau, we held that the absence of a written authorization did not preclude a finding that the contract was valid because the proscription of section *364 2309 does not "prohibit the enforcement of the agreement between the principal and the agent...." (Sunset-Sternau, supra, 60 Cal.2d at p. 842, 36 Cal.Rptr. 741, 389 P.2d 133.) In Rakestraw, we likewise stated, "section 2310 was not intended to apply to [an oral] ratification as between a principal and agent." (Rakestraw, supra, 8 Cal.3d at p. 76, 104 Cal.Rptr. 57, 500 P.2d 1401.) In other words, we held that sections 2309 and 2310 do not control if the principal or the agent is seeking to enforce (or void) an agreement vis-à-vis one another.
Application of this reasoning quickly disposes of respondents' contention that sections 2309 and 2310 do not apply to this transaction. Unlike in Rakestraw and Sunset-Sternau, there is no dispute between Shirley as agent and Austin as principal. As such, Rakestraw and Sunset-Sternau do not control.
But Shirley had two independent roles in this transaction. Not only did she act as Austin's agent and execute the grant deed on his behalf, she was also the party who received an interest in the property through the grant deed. In this case, Shirley is simply asserting her rights as the party who received an interest in the property, not her rights as Austin's agent.
Respondents insist that the transaction should be valid as a deed signed by Austin, because Shirley acted as Austin's amanuensis in that she performed a mere mechanical function in signing Austin's name to the deed. The amanuensis rule has successfully been invoked as an exception to section 2309.[2] Respondents assert that the Court of Appeal erred in concluding that Shirley did not qualify as an amanuensis because she did not sign the deed in Austin's presence. The sole authority cited by the Court of Appeal, Pitney v. Pitney (1921) 55 Cal. App. 22, 29, 202 P. 940 (Pitney), specifically requires that an amanuensis sign a deed in the presence of the grantor. In Pitney, the plaintiff, who was unable to read or write, had several deeds prepared for her. After they were read to her, she directed her attorney to sign her name, which he did in her presence. Such act "constituted and was in law the signature of the plaintiff." (Id. at p. 30, 202 P. 940.) The court explained, "`The only exception to the rule that an authority to execute a deed must be conferred by writing, is where the execution by the attorney is in the presence of the principal. The exception arises from the doctrine that what one does in the presence of and by the direction of another is the act of the latteras much so as if it were done by himself in person. The attorney in such case, so far as the signature to the instrument is concerned, is a mere amanuensis of the grantor, and in the affixing of the seal is only the instrument, the hand, as it were, of the grantor. It is not sufficient that the attorney was directed to sign the name of the principal and affix his seal; the execution must be in the immediate presence of the principal, and this fact must be affirmatively established by the party who relies upon it as an excuse for the absence of a power in writing.'" (Ibid., quoting Griffin, supra, 21 Cal. 389, 392.)
Subsequent cases have clarified, however, that application of the amanuensis rule is not confined to the situation in which an agent signs a contract in the principal's immediate presence. It may also apply when an agent, acting with *365 merely mechanical and no discretionary authority, signs the principal's name outside the principal's presence.
In Mihelis, supra, 60 Cal.2d 206, 32 Cal.Rptr. 415, 384 P.2d 7, a land purchaser orally authorized his agent, by telephone, to sign a land contract on his behalf. The seller invoked section 2309 to void the contract. We held that a contract signed by an agent in the principal's name, outside of the principal's presence, was binding. The signature was "purely a mechanical act which did not involve the exercise of discretion." (Mihelis, siipra, at p. 214, 32 Cal.Rptr. 415, 384 P.2d 7.) We explained: "[W]here the signing by an agent is an act of this character the authorization by the principal is not required to be in writing and the signature is to be treated as that of the principal whether or not he was present at the execution of the agreement." (Ibid.)
Similarly, in Munson, supra, 95 Cal. App.2d 306, 212 P.2d 603, the Court of Appeal held that the principal's oral request to his agent, by telephone, to sign a document was "perfectly valid, whether the name was signed in or out of his presence." (Id. at p. 313, 212 P.2d 603.) The Court of Appeal explained that the amanuensis rule was an exception to section 2309 because "`there was no attempt to delegate authority to the amanuensis to exercise discretion with respect to the provisions of the [agreement], but merely to authorize him to sign the agent's name to the document.'" (Munson, supra, at p. 312, 212 P.2d 603, quoting Kadota Fig, supra, 73 Cal.App.2d 815, 820, 167 P.2d 523.)
Likewise, Kadota Fig, supra, 73 Cal. App.2d 815, 167 P.2d 523, also held that an authorized agent's oral request that a third party perform "the mere mechanical act of signing" that agent's name to an instrument, outside the agent's presence, was "valid and binding," even though the instrument was required to be in writing. (Id. at p. 819, 167 P.2d 523.) There, the authorization was conveyed to a judge, by telephone, who acted as the amanuensis for the duly authorized agent of the principal. (Ibid.) The court held that section 2309, which requires a written authorization "`to enter into a contract required by law to be in writing'" (Kadota Fig, supra, at p. 821, 167 P.2d 523, quoting § 2309, italics added in Kadota Fig), was not applicable because the judge was given no authority "to enter into a contract." (Kadota Fig, supra, at p. 819, 167 P.2d 523.) Instead, as the judge exercised no discretion or judgment, he acted merely as an amanuensis. Despite its acknowledgement of Pitney, supra, 55 Cal.App. 22, 202 P. 940, the Kadota Fig court held there was no requirement that the signature be made in the agent's presence: "[W]e ... know of no authority which requires that the signature of the party shall be actually made in his presence." (Kadota Fig, supra, at p. 821,167 P.2d 523.)
As in Mihelis, supra, 60 Cal.2d 206, 32 Cal.Rptr. 415, 384 P.2d 7, we again reject the formalistic notion that an amanuensis must sign the document in the presence of the principal. Whether the principal directs the amanuensis by telephone or, as in the present case, the principal, in person, tells the amanuensis to sign the document and the actual signing is done outside the principal's presence, courts are required to determine whether the signing is a mechanical act.[3]

*366 III.
In the above cited cases, however, the amanuensis had no interest in the contract. Here, Shirley claims to be an amanuensis despite the fact that she is also the sole beneficiary of this transfer. No prior California decision has addressed the issue of an "interested amanuensis."[4] Obvious concerns arise; namely, whether the transfer was the product of fraud, duress, or undue influence. Accordingly, if the amanuensis will directly benefit from the transfer of title, the validity of the transfer must be examined under a heightened level of judicial scrutiny.
In an undue influence case, for example, "[w]here the relationship between the parties is that of parent and child and the parent relies on the child for advice in business matters, a gift inter vivos ... which is without consideration and where the parent does not have independent advice, is presumed to be fraudulent and to have been made under undue influence." (Sparks v. Mendoza (1948) 83 Cal.App.2d 511, 514, 189 P.2d 43.)[5] The burden of proof then shifts to the child "to show that the transaction was free from fraud and undue influence, and in all particulars fair." (Sparks, supra, at p. 515, 189 P.2d 43.) Put differently, this presumption may be rebutted by "evidence that the act in question had its genesis in the mind of the parent and that he was not goaded to a completion by any act of such child." (Goldman v. Goldman (1953) 116 Cal.App.2d 227, 234, 253 P.2d 474.) The child's burden of proof is by a preponderance of the evidence. (Estate of Gelonese (1974) 36 Cal.App.3d 854, 862-863, 111 Cal. Rptr. 833.)
The amanuensis rule is an exception to Civil Code sections 2309 and 2310 and also operates as an exception to Probate *367 Code section 4264, subdivision (c), which prohibits attorneys-in-fact from making gifts of property to themselves.[6] Because unscrupulous parties could attempt to use the amanuensis rule to sidestep the protections contained in these code sections, we hold that the signing of a grantor's name by an interested amanuensis must be presumed invalid. In such a case, the interested amanuensis bears the burden to show that his or her signing of the grantor's name was a mechanical act in that the grantor intended to sign the document using the instrumentality of the amanuensis.[7]

IV.
Given that Shirley was an interested party to the deed, it is presumed that her signing of Austin's name was invalid. However, this presumption has been successfully rebutted in this case. The trial court found, based on overwhelming evidence, that Shirley acted as a mere amanuensis, signing the deed at Austin's direct request, albeit not in his immediate presence. Because her signature was a mere mechanical act, and not an exercise of judgment or discretion, Austin's oral instruction to Shirley was sufficient. "It is perfectly natural for a parent to be more bountiful to one of his children who has assumed the greatest burden of care and lavished the highest degree of solicitude upon him." (Camperi v. Chiechi, supra, 134 Cal.App.2d at p. 505, 286 P.2d 399.) The conveyance of Austin's real property to Shirley, therefore, must be deemed valid, as a deed executed by him. (Civ.Code, § 1091.)
The judgment of the Court of Appeal is reversed.
WE CONCUR: GEORGE, C.J., BAXTER, WERDEGAR, CHIN and BROWN, JJ.
Dissenting Opinion by KENNARD, J.
Under California law, an interest in real property can be transferred only in writing. Ordinarily, the document transferring the interest must be signed by the donor, but a judicially created rule upholds conveyances signed by an "amanuensis"; *368 that is, one who performs a "mechanical function" in signing the donor's name.
In this case, a woman claiming to be an amanuensis signed her father's name to a deed conveying a joint tenancy interest in her father's house to herself. The majority holds that the transaction is valid. I disagree.

I
Civil Code section 1091 states: "An estate in real property ... can be transferred only by operation of law, or by an instrument in writing, subscribed by the party disposing of the same, or by his agent thereunto authorized by writing." This provision is part of California's statute of frauds, which is based on the Statute of Frauds enacted in England in 1677, and which also applies to other important transactions such as contracts not to be performed within the lifetime of the promisor (Civ.Code, § 1624, subd. (a)(5)), agreements to lend amounts greater than $100,000 (Civ.Code, § 1624, subd. (a)(7)), creation of a suretyship (Civ.Code, § 2793), contracts for the sale of goods worth more than $500 (Cal.Civ.Com.Code, § 2201), and agreements to arbitrate a dispute (Code Civ. Proc., §§ 1281, 1281.2).
The preamble to the English Statute of Frauds stated that its purpose was the "prevention of many fraudulent Practices which are commonly endeavoured to be upheld by Perjury and Subordination of Perjury." (See Smith, A Treatise on the Law of Frauds and the Statute of Frauds (1907) p. 323.) By requiring that the specified transactions be in writing and signed by the parties, the statute of frauds avoids the likelihood that permitting oral proof of such transactions would encourage fraudulent claims by swindlers gambling that they can glibly persuade a jury to enforce a nonexistent oral agreement. (Id. at p. 326, 286 P.2d 399.)
Although generally a party to a transaction protected by the statute of frauds must personally sign the document implementing the transaction, the signature of an agent with written authorization (Civ. Code, §§ 1091, 2309) or an amanuensis (Kadota Fig Assn. of Prods, v. Case-Swayne Co. (1946) 73 Cal.App.2d 815, 821, 167 P.2d 523) will also suffice. But no one who stands to benefit by the transaction implemented in the document may sign on another's behalf. Section 24 of the Restatement Second of Agency states: "One party to a transaction can be authorized to act as agent for the other party thereto, except for the purpose of satisfying the requirements of the Statute of Frauds." (Italics added.) The author of a noted treatise agrees: "In the making of an ordinary written contract, the signature of either party can be validly inscribed by the other party if the latter is authorized by the first to do so. The decisions have established an exception to this rule in the case of contracts within the statute of frauds; they hold that the signature is not sufficient to bind a party if it is inscribed by the other party, even though the latter acted with the express authority of the former, at least if it is orally given." (4 Corbin on Contracts (rev. ed.1997) § 23.6, p. 815.)
A rule permitting an interested party to sign another party's name to a document covered by the statute of frauds creates an exception to the statute that is so broad as to defeat its purpose, which is to prevent perjury by requiring that important transactions be in writing and signed by the parties. Otherwise, a party could write a document implementing such a transaction, sign the other party's name, and then enforce it by falsely testifying that the signature was authorized. (See 4 Corbin on Contracts, supra, at pp. 815-816.) As one court has stated, if a party to *369 a contract or conveyance for which a signature is required by the statute of frauds could sign the other party's name to the implementing document, "the Statute of Frauds would be deprived of its meaning and reduced to an absurdity." (Tate v. Shober (E.D.Pa.1941) 41 F.Supp. 478, 481.)
The rule described in the previous paragraph is recognized not only by the Re. statement (Rest.2d Agency, § 24, p. 96) but also by one of the most prominent treatises on the law of contracts (4 Corbin on Contracts, supra, at pp. 815-816) and by legal encyclopedias (37 C.J.S. (1997) Statute of Frauds, § 134, p. 440; 72 Am. Jur.2d (2001) Statute of Frauds, § 297, pp. 792-793), as well as more than a dozen decisions (Woodruff Oil & Fertilizer Co. v. Portsmouth Cotton Oil Refining Corp. (4th Cir.1917) 246 Fed. 375, 375; Tate v. Shober, supra, 41 F.Supp. 478, 481; Happ Bros. Co. v. Hunter Mfg. & Commission Co. (1916) 145 Ga. 836, 836, 90 S.E. 61; Lowe v. Mohler (1914) 56 Ind.App. 593, 105 N.E. 934, 936; Wingate v. Herschauer (1876) 42 Iowa 506, 508; Bent v. Cobb (1857) 75 Mass. (9 Gray) 397, 397; Dunham v. Hartman (1900) 153 Mo. 625, 55 S.W. 233, 234; Wilson v. Lewiston Mill Co. (1896) 150 N.Y. 314, 325, 44 N.E. 959, 962; Regal Music Co. v. Hirsch (1959) 116 Misc.2d 365, 183 N.Y.S.2d 474, 479; Dorian Holding & Trading Corp. v. Brunswick Terminal Co. (1930) 230 A.D. 514, 245 N.Y.S. 410, 414; Asbury v. Mauney (1917) 173 N.C. 454, 458-459, 92 S.E. 267, 269; Dodd v. Stewart (1923) 276 Pa. 225, 228, 120 A. 121, 122; Walker v. Keeling (Tex. Civ.App.1942) 160 S.W.2d 310, 311).
At issue here is the validity of a deed conveying an interest in real property from Austin Stephens to his daughter, Shirley. The latter, who cared for her blind and aging father before he died, signed his name to the deed, and the testimony of an independent witness supports Shirley's claim that Austin told her to do so. But under the rule described above, Shirley was not allowed to sign her father's name to the deed because she was a party to that transaction. Thus, the deed does not comply with the statute of frauds and Shirley's heirs, who became parties when Shirley died while this appeal was pending, may not rely on it to support their claim to the property.
The majority acknowledges that its rule permitting an interested party such as Shirley to act as an amanuensis may be an invitation to fraud. (Maj. opn., ante, 122 Cal.Rptr.2d at p. 366, 49 P.3d at pp. 1099-1100.) To circumvent this problem, the majority proposes a "heightened level of judicial scrutiny." (Id., 122 Cal.Rptr.2d at p. 366, 49 P.3d at p. 1100.) The majority holds that a signing of a grantor's name by an interested amanuensis shall be "presumed invalid," and any interested amanuensis shall "bear[ ] the burden to show that his or her signing of the grantor's name was a mechanical act...." (Id., 122 Cal. Rptr.2d at p. 367, 49 P.3d at p. 1100.) According to the majority, Shirley rebutted this presumption of invalidity by evidence that Austin asked her to sign the deed on his behalf.
This rule may look good at first glance, but in practice it will have little effect. Any swindler who signs an aging and infirm relative's name to a deed without the relative's permission can easily defeat the presumption of invalidity by falsely testifying that the relative asked the swindler to sign as an amanuensis. And contrary to the majority's claim that it is subjecting claims by interested amanuenses to "heightened" scrutiny, its standard of proofby preponderance of the evidenceis no different from the standard used in any civil case. (See Evid.Code, §115 ["Except as otherwise provided by *370 law, the burden of proof requires proof by a preponderance of the evidence."].)

II
My sympathies lie with Shirley, because the evidence at trial suggests that she was a loving and caring daughter who acted in accord with the wishes of her ailing father when she signed his name to the deed conveying to her a joint tenancy interest in her father's home. That, however, is beside the point. The result in this case cannot depend on personal sympathies toward the claimant.
In the words of Lowe v. Mohler, supra, 56 Ind.App. 593, 105 N.E. 934, 936: "It is doubtless true that in some instances the application of this doctrine [that an interested party may not sign the name of another party to a document required by the statute of frauds] may work a hardship, and innocent parties may be required to suffer therefrom; but the aggregate good which comes from its strict enforcement so far overshadows the evil that the courts uniformly adhere to the rule as announced."
I would affirm the judgment of the Court of Appeal, which held that the deed purporting to transfer an interest in Austin Stephens's house to his daughter Shirley violated the statute of frauds.
NOTES
[1] The Oxford English Dictionary (2d ed.1989) defines "amanuensis" as "one who copies or writes from the dictation of another." Pablo Neruda has penned: "In the center of the earth I will push aside the emeralds so that I can see youyou like an amanuensis, with a pen of water, copying the green sprigs of plants." (Neruda, 100 Love Sonnets (1986) "In the Center of the Earth," p. 211, 1st verse.)
[2] See, e.g., Ellis v. Mihelis (1963) 60 Cal.2d 206, 213, 32 Cal.Rptr. 415, 384 P.2d 7 (Mihelis); Murphy v. Munson (1949) 95 Cal.App.2d 306, 311-313, 212 P.2d 603 (Munson); Kadota Fig Assn. v. Case Swayne Co. (1946) 73 Cal.App.2d 815, 821, 167 P.2d 523 (Kadota Fig). These cases are fully discussed, post.
[3] Estate of Huston (1997) 51 Cal.App.4th 1721, 60 Cal.Rptr.2d 217, cited by both parties, does not control here because the Huston court did not consider the amanuensis rule since it was never alleged by the parties. Given our holding today, Huston is inapplicable.
[4] While there is scant authority on the specific issue of the interested amanuensis, other jurisdictions have permitted the practice. (See, e.g., Councill v. Mayhew (1911) 172 Ala. 295, 55 So. 314, 319 [decedent's secretary could properly act as amanuensis and write decedent's will as dictated by decedent despite fact she was a minor beneficiary under the will]; In re Martin's Estate (1953) 1953 Okla. 260, 261 P.2d 603, 606 [decedent's sister, principal beneficiary under will, where she did no more than write will exactly as decedent dictated, could recover under will]; see also Bartlett v. Drake (1868) 100 Mass. 174, 175 [court upheld wife's signing of husband's name to deed, in his absence, where he "recogni[zed] and adopt[ed] the signature as his own"], cited with approval in Blaisdell v. Leach (1894) 101 Cal. 405, 409, 35 P. 1019, and in Knaugh v. Baender (1927) 84 Cal.App. 142, 148, 257 P. 606; Mondragon v. Mondragon (1923) 113 Tex. 404, 257 S.W. 215, 217 [sale of land from one brother to another upheld where the grantee wrote the contract and signed the name of both parties; court quoted amanuensis rule, but based its decision on fact that grantor adopted (as opposed to ratified) the contract after it was signed ].)

The dissent correctly notes that several courts and commentators have endorsed the general rule that an agent, acting for one party to a contract of sale required to be in writing, cannot also act as the agent for the other party and validly bind that other party to such contract. (Dis. opn., post, 122 Cal. Rptr.2d at pp. 368-369, 49 P.3d at p. 1102.) Our decision does not conflict with this line of cases because we recognize that Shirley was not authorized to sign the deed as Austin's agent. Despite its claims to the contrary, however, the dissent cites no case where a court has held that a beneficiary to a will cannot also act as an amanuensis. As noted above, other jurisdictions have permitted this practice. (See, e.g., Councill v. Mayhew, supra, 55 So. at p. 319; In re Martin's Estate, supra, 261 P.2d at p. 606.)
[5] "`Lack of independent [legal] advice by the grantor is not of and in itself a ground for vitiating a deed ... but is a fact to be weighed by the trial court in determining whether the grantor acted voluntarily....'" (Camperi v. Chiechi (1955) 134 Cal.App.2d 485, 505, 286 P.2d 399, quoting O'Neill v. Dennis (1952) 109 Cal.App.2d 210, 214, 240 P.2d 376.)
[6] Probate Code section 21350, subdivision (a)(1) disqualifies the drafter of an instrument from being the recipient of a donative transfer under that instrument. Section 21350, subdivision (a)(4) prohibits a person with a "fiduciary relationship with the transferor" from being a recipient where such person "causes [the document] to be transcribed." Section 21351, subdivision (a) exempts from section 21350, subdivision (a)(1) and (4) recipients who are related by blood to the transferor. In Rice v. Clark (2002) 28 Cal.4th 89, 120 Cal.Rptr.2d 522, 47 P.3d 300, we discussed this statutory scheme in depth. To the extent that Shirley would be considered a "drafter" or "transcriber" under this scheme, as a blood relative, she would be exempt from the provisions of section 21350. When the amanuensis theory is offered in a situation where the donative transfer is prohibited under section 21350, however, the statutory scheme controls.
[7] The dissent states that the protections outlined above "may look good at first glance, but ... [a]ny swindler who signs an aging and infirm relative's name to a deed ... can easily defeat the presumption of invalidity by falsely testifying that the relative asked the swindler to sign as an amanuensis." (Dis. opn., post, 122 Cal.Rptr.2d at p. 369, 49 P.3d at p. 1103.) These fears are unfounded. In the present case, based upon the testimony of several disinterested witnesses, the trial court overwhelmingly found that Shirley acted as Austin's amanuensis. On the other hand, it is unlikely that a "swindler's" testimony, without corroboration, will rebut the presumption of invalidity. Indeed, as seen in undue influence cases (ante, 122 Cal.Rptr.2d at p. 366, 49 P.3d at p. 1100) upon which our rule is patterned, the presumption of invalidity effectively acts as a safeguard against unscrupulous relatives who would otherwise seek to take advantage of an aging and infirm relative.