T.C. Memo. 2013-126

UNITED STATES TAX COURT

LAURA UNG, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10182-11.                    Filed May 13, 2013.

R determined a deficiency and a penalty for P's 2008 tax year. The primary issues are whether distributions from each of P's two qualified retirement plans are subject to the 10% additional tax on early distributions pursuant to I.R.C. sec. 72(t) and whether P is liable for the accuracy-related penalty under I.R.C. sec. 6662(a).

Held: P does not qualify under any of the exceptions pursuant to I.R.C. sec. 72(t) and is liable for the 10% additional tax for early distributions from the retirement plans for 2008.

Held, further, P is liable for the accuracy-related penalty pursuant to I.R.C. sec. 6662(a) for 2008.

[*2]   Laura Ung, pro se.

Carolyn A. Schenck, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


WHERRY, Judge:  This case is before the Court on a petition for

redetermination of a deficiency in petitioner's income tax for the 2008 tax year.[1]

After concessions the issues remaining are:[2]

(1) whether a 2008 distribution of $20,000 from petitioner's Morgan Stanley

& Co. retirement account qualifies under the first-time home purchase exception

pursuant to section 72(t)(2)(F);

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended and in effect for the taxable year at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Petitioner concedes that she had unreported wage income from Hardin Hyundai of $7,046 for 2008.  Petitioner concedes that she had unreported interest income from her Citibank account of $11 for 2008.  Petitioner also concedes that she received a taxable distribution from her Fidelity Investments retirement account of $256 that was unreported for 2008.  Finally, petitioner concedes that she received a $20,000 taxable distribution from her Morgan Stanley retirement account that was originally unreported on her 2008 tax return.

**[\*3]** (2) whether a 2008 distribution of $256 from petitioner's Fidelity Investments retirement account qualifies under any exception pursuant to section 72(t)(2); and

(3) whether petitioner is liable for a section 6662(a) accuracy-related penalty of $1,654 for 2008.

FINDINGS OF FACT

The parties' stipulation of facts, with accompanying exhibits, and the supplemental stipulation of facts, with accompanying exhibits, are incorporated herein by this reference. At the time the petition was filed, petitioner resided in California.

During 2008 petitioner held various financial records positions with Los Angeles, California, area car dealerships.[3]

---

[3]The notice of deficiency and petitioner's petition to this Court originally listed her first name as "Lora". However, on petitioner's 2008 tax return, her first name is spelled "Laura". During trial petitioner testified that she legally changed her name about four or five years ago from "Lora" to "Laura". Petitioner did not contest the different spellings of her first name. For purposes of this opinion, this Court takes notice that although petitioner's legal name is now "Laura", she also spelled her name as either "Lora" or "Laora" on documentation relating to the 2008 tax year.

**[\*4]** <u>Properties Associated With Petitioner</u>[4]

A certified grant deed recorded with the Los Angeles County Office of the Registrar-Recorder/County Clerk documents the purchase of a residential property at 422 Ellen Drive, West Covina, California (Ellen Drive property), on August 5, 2000, by petitioner under the name "Laora Ung". On December 23, 2002, petitioner retitled the property by executing a new grant deed from "Laora Ung" to "Lora D. Ung". A subsequent grant deed from "Lora D. Ung" to "Chamnam D. Ung and Lora D. Ung" as joint tenants transferred ownership of the residential property on March 26, 2004, to the two of them. Chamnam D. Ung is petitioner's brother.

In 2006 the Ellen Drive property was sold by "Chamnam D. Ung and Lora D. Ung" as joint tenants. Between 2002 and 2006, for purposes of filing her

---

[4]At trial respondent's witness Revenue Officer Huerta-Harris testified that she ran a property records search for both the Ellen Drive property and 1704 Kam Court, West Covina, California (Kam Court property). On May 15, 2012, Revenue Officer Huerta-Harris conducted a search using petitioner's first and last name. It is unclear what name Revenue Officer Huerta-Harris used for the May 15, 2012, search. On May 31, 2012, Revenue Officer Huerta-Harris went back to the county recorder's office under the instruction to search for property records on variations of petitioner's name.

[*5] Federal income tax returns, petitioner listed the Ellen Drive property as her contact and mailing address.[5]

On October 30, 2007, a recorded corporation grant deed conveyed title to the Kam Court property from Homecomings Financial LLC to "Chamnam D. Ung". In addition to her brother's name, petitioner's name appears, as "Lora Ung", in the "WHEN RECORDED MAIL TO:" address portion of the deed instructing the Registrar-Recorder/County Clerk where to send the deed after it was recorded. Petitioner's brother's name is the only name listed on the deed to the Kam Court property.

Petitioner's $256 Withdrawal From her Fidelity Investments Retirement Account

Petitioner received a distribution of $256 from her Fidelity Investments retirement account on March 31, 2008. The check issued by Fidelity Investments to petitioner lists the Kam Court property as her mailing address.

Petitioner's $20,000 Withdrawal From her Morgan Stanley Retirement Account

On January 1, 2008, petitioner requested a withdrawal of $20,000 from her Morgan Stanley retirement account. Petitioner listed the Kam Court property as

_____

[5]During the 2006 tax year, in addition to the Ellen Drive address, some of petitioner's employers and banks reported her address as 333 East Altern Street, Monrovia, California. There is no evidence in the record that petitioner has ever purchased or owned the property associated with this address.

[*6] the address to which Morgan Stanley was to mail her distribution check. In response to petitioner's request, Morgan Stanley issued her a check for $20,000 on January 25, 2008, reflecting the Kam Court property as her mailing address.

On January 31, 2011, respondent sent to petitioner a notice of deficiency determining a deficiency of $8,778 and a section 6662(a) accuracy-related penalty of $1,654.[6] According to respondent, the 10% additional tax arises on each separate distribution because the $20,000 Morgan Stanley and $256 Fidelity Investments withdrawals do not qualify for any of the exceptions to the 10% additional tax.[7] Petitioner timely petitioned the Court for redetermination of the deficiency on May 2, 2011, and later amended her petition on June 20, 2011. Petitioner claims that her Morgan Stanley distribution is exempt from the 10% additional tax because she used the proceeds to pay for qualified acquisition costs

---

[6]The stipulation of facts states that the notice of deficiency was mailed to petitioner on April 14, 2010. However, the date on the notice of deficiency is January 31, 2011. We believe the date in the stipulation of facts was a typographical error on respondent's part and that January 31, 2011, is the date that respondent mailed the notice of deficiency to petitioner. Petitioner received the notice of deficiency within the applicable three-year period of limitations. See sec. 6501(a).

[7]The retirement plan distribution is premature because petitioner had not attained the age of 59½ at the time of the distribution and would need to qualify under an exception in order to avoid the otherwise automatic 10% additional tax. See sec. 72(t)(1) and (2).

**[*7]** of a first-time home purchase, which qualifies as an exception to the section 72(t) 10% additional tax pursuant to section 72(t)(2)(F). Petitioner makes no argument with respect to her Fidelity Investments distribution.

OPINION

I.      Burden of Proof

The Commissioner's determination of a taxpayer's liability for an income tax deficiency is generally presumed correct, and the taxpayer bears the burden of proving that the determination is improper. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). However, pursuant to section 7491(a)(1), the burden of proof as to a factual issue that affects the taxpayer's tax liability may be shifted to the Commissioner. This occurs where the "taxpayer introduces credible evidence with respect to * * * [that] factual issue" and the taxpayer has, inter alia, complied with substantiation requirements pursuant to the Code, "maintained all records required under this title and has cooperated with reasonable requests by the Secretary for witnesses, information, documents, meetings, and interviews". Sec. 7491(a)(1), (2)(B). Petitioner did not contend that the burden should shift, and she provided little in the way of records to support her position. Accordingly, the burden of proof remains on petitioner.

**[*8]** II.    Ten Percent Additional Tax on Early Distributions From a Retirement Account

    A.    Section 72(t)

To discourage individuals from taking premature distributions from retirement plans Congress enacted section 72(t), imposing an additional tax of "10% of the portion of such amount which is includible in gross income." Sec. 72(t)(1); see also Dwyer v. Commissioner, 106 T.C. 337, 340 (1996); S. Rept. No. 93-383, at 134 (1974), 1974-3 C.B. (Supp.) 80, 213 (stating that "[p]remature distributions frustrate the intention of saving for retirement, and the committee bill, to prevent this from happening, imposes a penalty tax" of 10%). Section 4974(c) describes the various types of retirement accounts and plans whose distributions are subject to the 10% additional tax of section 72(t)(1), including individual retirement accounts (IRAs) described in section 408(a). Petitioner's Morgan Stanley and Fidelity Investments accounts are IRAs described in section 408(a).

Congress enacted section 72(t)(2) to grant relief in certain circumstances from the 10% additional tax. Examples include premature distributions made as a result of the death of the taxpayer, sec. 72(t)(2)(A)(ii); because of the taxpayer's

[*9] being disabled, sec. 72(t)(2)(A)(iii); and to pay health insurance premiums for the taxpayer during certain periods of unemployment, sec. 72(t)(2)(D).

In 1997, as part of the Taxpayer Relief Act of 1997, Pub. L. No. 105-34, secs. 203 and 303, 111 Stat. at 809, 829, Congress enacted two more exceptions to the 10% additional tax:  premature distributions for qualified education expenses, sec. 72(t)(2)(E), and, pertinent to this case, premature distributions for first-time homebuyers, sec. 72(t)(2)(F).  With respect to first-time home purchases, Congress capped the exemption at a lifetime distribution limit of $10,000.  Sec. 72(t)(8)(B). As a result, the total potential lifetime tax savings under this provision is $1,000 (10% of $10,000).

### B.    The First-Time Home Purchase Exception

A qualified first-time home purchase distribution is a distribution from an IRA in an amount not to exceed $10,000 that is used within 120 days of its receipt to pay qualified acquisition costs with respect to a principal residence of a first-time homebuyer.  Sec. 72(t)(2)(F), (8)(A) and (B).  A first-time homebuyer is an individual who has not had a present ownership interest in a principal residence, as defined in section 121, during the two-year period ending on the date of acquisition of another principal residence.  Sec. 72(t)(8)(D)(i) and (ii).  The date of acquisition is the date on which a binding contract to acquire the principal

[*10] residence is entered into or when construction or reconstruction is commenced. Sec. 72(t)(8)(D)(iii). Qualified acquisition costs are the costs of acquiring, constructing, or reconstructing a residence and include any usual or reasonable settlement, financing, or other closing costs. Sec. 72(t)(8)(C).

### C. The $20,000 Distribution From Morgan Stanley

Petitioner contends that her withdrawal of $20,000 from her Morgan Stanley IRA qualifies for the first-time home purchase exception because she used the money towards the downpayment for the purchase of the Kam Court property.[8] Respondent makes three arguments with respect to petitioner's claim. First, petitioner does not own the Kam Court property because her name is not on the deed. Second, even if petitioner's name was on the Kam Court property deed, she is not a first-time homebuyer because she had prior ownership within two years of the Ellen Drive property. Third, again assuming arguendo that petitioner owned the Kam Court property, she did not use the $20,000 distribution for qualified acquisition costs incurred in the year this property was purchased, which was 2007.

---

[8]Only $10,000 from the actual distribution would be exempt. See sec. 72(t)(8)(B)(i).

**[*11]** Petitioner stated that she owned the Kam Court property because she made the offer to purchase it and withdrew the $20,000 from her Morgan Stanley retirement account to apply towards the downpayment. Title to real estate is governed by the laws of the place where it is situated. See Montgomery v. Samory, 99 U.S. 482, 483 (1878). Under California law, a deed is a written instrument conveying or transferring the title to real property; it is an executed conveyance and operates as a present transfer of the real property. Estate of Stephens v. Williams, 49 P.3d 1093, 1096 (Cal. 2002). "[I]t is clear that if there is only one owner of record of a legal estate or title, he is the sole owner thereof even if the ownership is only of the naked legal estate or title. * * * [I]t is plain that under the statute * * * [, Cal. Civ. Code sec. 683, the legal title owner] may convey the legal title to himself and another as he is the sole owner of what he conveys, i.e. the legal title." Lowenthal v. Kuntz, 231 P.2d 62, 64 (Cal. App. 2d 1951). Petitioner is not the legal title owner and has failed to prove that she is an equitable title owner.

The Kam Court property deed lists only petitioner's brother as the owner. Petitioner submitted an incomplete copy of the residential purchase agreement for the Kam Court property that does not provide a sufficient basis upon which this Court may determine the purchaser of the property. An addendum to the

**[\*12]** residential purchase agreement, however, lists the buyer of the Kam Court property as "Chamnam Ung" and not petitioner.  Petitioner's brother also secured the loan in order to purchase the Kam Court property.  Petitioner did not execute any agreements with her brother with respect to the Kam Court property.

At trial petitioner submitted home warranty fee bills for plumbing repairs, invoices from Home Depot, and receipts for payments to a contractor to prove that she paid these expenses since she was the Kam Court homeowner.  Absent legal documentation that confers title on petitioner, payments for home repairs are not "acquiring, constructing or reconstructing" costs within the meaning of section 72(t)(8)(C) and do not, without substantially more, constitute or establish either legal or equitable homeownership.  Cal. Civ. Code sec. 1091 (West 2007) ("An estate in real property * * * can be transferred only by operation of law, or by an instrument in writing.").  On the basis of the record, we find that petitioner did not hold an ownership interest in the Kam Court property.  Because we find that petitioner had no ownership interest in the Kam Court property, we need not address whether the Morgan Stanley distribution qualifies under the first-time

**[\*13]** home purchase exception or whether the $20,000 distribution was used for qualified acquisition costs.[9]

### D.     The $256 Distribution From Fidelity Investments

At trial petitioner produced no evidence that she qualified for any exception from the early withdrawal penalty.  In fact, petitioner stated that she did not object to the imposition of the 10% additional tax with respect to her Fidelity Investments withdrawal.  Upon the record before us and absent evidence to the contrary, we conclude that the $256 distribution petitioner received from Fidelity Investments is subject to the 10% additional tax.

### III.    Section 6662(a) Accuracy-Related Penalty

Section 6662(a) and (b)(2) imposes a penalty of 20% on the portion of an underpayment of tax attributable to, among other things, a substantial understatement of income tax.  An understatement of income tax is substantial within the meaning of section 6662(b)(2) if, in the case of individuals as relevant here, the understatement exceeds the greater of 10% of the tax required to be shown on the return or $5,000.  See sec. 6662(d); sec. 1.6662-4(b), Income Tax

---

[9]Even if we did find that she held an ownership interest in the Kam Court property, petitioner's prior ownership in the Ellen Drive property within two years of the Kam Court purchase disqualifies her as a first-time homebuyer pursuant to sec. 72(t)(8)(D)(i).

**[\*14]** Regs. Respondent bears the burden of production with respect to the imposition of the penalty, see sec. 7491(c), and that has been satisfied because the understatement of income tax exceeds both 10% of the tax required to be shown on the tax return and $5,000, see secs. 6211, 6662(d)(2), 6664(a). It is petitioner's burden to establish that the imposition of the penalty is not appropriate because, inter alia, of a defense such as reasonable cause under section 6664(c). See Higbee v. Commissioner, 116 T.C. 438, 447 (2001).

Section 6664(c)(1) provides an exception to the imposition of the accuracy-related penalty if the taxpayer establishes that there was reasonable cause for, and the taxpayer acted in good faith with respect to, the underpayment. Sec. 1.6664-4(a), Income Tax Regs. The determination of whether the taxpayer acted with reasonable cause and in good faith "is made on a case-by-case basis, taking into account all pertinent facts and circumstances." Sec. 1.6664-4(b)(1), Income Tax Regs.

Petitioner worked in several different financial records positions. Petitioner had her 2008 tax return prepared by Pedro Aguilar of P.A. Mortgage, Inc., using records and information given to him. Petitioner testified that she did not provide Mr. Aguilar with the 2008 Forms 1099-MISC, Miscellaneous Income, issued by Morgan Stanley and Fidelity Investments. To avoid liability for a section 6662(a)

[*15] penalty on the grounds of reliance on a tax professional, a taxpayer must meet the following three requirements: "(1) The adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment." Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002).

Petitioner did not review her 2008 tax return before it was filed with respondent and testified that she should have reviewed her tax return before she signed anything. Petitioner candidly testified that it was irresponsible of her to not provide Mr. Aguilar with all of the forms and documents, including all Forms W-2, Wage and Tax Statement, and Forms 1099-MISC that related to the 2008 tax year. Petitioner failed to satisfy the requirements of Neonatology Assocs. to establish reasonable cause or that she acted in good faith with respect to any portion of the underpayment of tax or that any portion of the underpayment is due to reasonable cause. Petitioner is liable for the section 6662(a) accuracy-related penalty for 2008.

The Court has considered all of petitioner's contentions, arguments, requests, and statements. To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

**[*16]** To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.